LANE, SECRETARY OF THE INTERIOR, *v.* UNITED STATES EX REL. MICKADIET AND TIEBAULT.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 449.   Argued April 10, 1916.—Decided May 22, 1916.

The general rule that courts have no power to interfere with the performance by the Land Department of the administrative duties devolving upon it, although they may, when the functions of the Department are at end, correct, as between proper parties, errors of law committed by the Department in such administration, *held* to be applicable in this case, as no exception exists to take it out of the rule.

Under the acts of May 8, 1906 and June 25, 1910, the Secretary of the Interior has exclusive authority and jurisdiction to determine the heirs of an allottee Indian who are entitled to succeed to the allotment made to him under the act of February 8, 1887, in case of his death during the restricted period; and this authority includes the right to reopen and review a previous administrative order on proper charges of newly discovered evidence or fraud while the property is still under administrative control.

A court has no power to issue a writ of mandamus to control the conduct of the Secretary of the Interior concerning a matter within his administrative authority.

43 App. D. C. 414, reversed.

THE facts, which involve the construction of the act of February 8, 1887, and the jurisdiction of the courts to control by mandamus the action of the Secretary of the Interior concerning an allotment thereunder, are stated in the opinion.

*The Solicitor General,* with whom *Mr. Robert Szold* was on the brief, for plaintiff in error:

Since the United States, the real party defendant, has not consented to be sued in this cause, it should be dismissed for want of jurisdiction.

The United States is the real party defendant. *Naganab* v. *Hitchcock,* 202 U. S. 473; *Oregon* v. *Hitchcock,* 202 U. S. 60.

The immunity of the United States from suit is not waived by failure to present the point in the lower court. *Carr* v. *United States;* 98 U. S. 433, 438; *Stanley* v. *Schwalby,* 162 U. S. 255, 270.

Prior to conveyance of legal title to the heirs of the Indian allottee the Secretary of the Interior has jurisdiction to reconsider a determination of heirship.

The statutory direction that the Secretary's decision shall be "final and conclusive" is addressed to the courts. *Hallowell* v. *Commons,* 239 U. S. 506; *Pearson* v. *Williams,* 202 U. S. 281.

The decided cases settle the general rule. *Brown* v. *Hitchcock,* 173 U. S. 473; *Knight* v. *Lane,* 228 U. S. 6.

In this case the legal title beyond all doubt remains in the United States. *United States* v. *Rickert,* 188 U. S. 432.

The judgment of the Secretary cannot be controlled by mandamus. The petition was premature.

The order for rehearing was not arbitrary, but within the exercise of reasonable discretion. *Jaster* v. *Currie,* 69 Nebraska, 4; *Tucker* v. *Fisk,* 154 Massachusetts, 574.

*Mr. Irving F. Baxter,* with whom *Mr. Norris Brown, Mr. Edward F. Colladay* and *Mr. Howard Saxton* were on the brief, for the defendant in error:

There is no disagreement as to the facts. The petition of the relators and the return thereto are in substantial accord. The demurrer to the return and the assignments of error appearing in the record present, in substance, the following propositions of law:

The Secretary of the Interior is without jurisdiction to annul a decision of his predecessor relating to property rights because such decision is a judicial act and can only be reviewed, if reviewable at all, by the courts.

The Secretary of the Interior is without power under the act of June 25, 1910, to review, vacate or ignore the decree of adoption entered by the County Court.

The decree of adoption of the County Court, acting within its jurisdiction, from which no appeal was taken, is not subject to collateral attack, and the Secretary of the Interior is without power or jurisdiction to annul, modify, vacate or ignore said decree.

Harrison Tebo, who made the application to have the decision of the Secretary of the Interior heretofore rendered in favor of these relators reviewed and vacated, together with all other blood relatives of the deceased, are estopped in law to question the validity of said decree of adoption, said decree being final and binding upon deceased in his lifetime and upon his heirs after his death.

The petition of the relators to the Secretary of the Interior under the provisions of the act of May 8, 1906, to issue to them patents in fee simple presented but one question within the jurisdiction of the Secretary to decide, namely, whether said applicants were capable of managing their own affairs and were hence entitled to such patents. Said petition did not, and could not, raise any issue as to their heirship.

*Mr. Charles J. Kappler* and *Mr. Harry L. Keefe*, by leave of the court, filed a brief as *amici curiæ*.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The relators, who are defendants in error, invoked the aid of the trial court to control by mandamus the action of the Secretary of the Interior concerning an allotment in severalty of land made to an Indian in pursuance of the authority conferred by the act of February 8, 1887 (c. 119, 24 Stat. 388), entitled "An Act to provide for the allotment of lands in severalty to Indians on the various reservations." Under the facts stated in his return to the alternative rule the Secretary, asserting that the land embraced by the allotment in question was held in trust by the United States for the benefit of the allottee and that the official action sought to be prohibited was not subject to judicial control because it was one of exclusive administrative authority, denied that there was a right to grant the relief prayed. The return was demurred to as stating no ground for withholding the relief. The trial court overruled the demurrer and discharged the rule but the court below reversed and, holding that the Secretary had no power to take the action which it was alleged he intended to take concerning the allotment in question, awarded the mandamus prayed (43 App. D. C. 414), and the correctness of this ruling is the question now to be decided.

The facts are these: Tiebault was a Winnebago Indian living on the tribal reservation in Nebraska and in August, 1887, received an allotment in severalty of the tribal land to which he was entitled made in virtue of the act of 1887. That act after conferring authority upon the Secretary of the Interior to make allotments of tribal lands as therein specified, directed that official to issue

to the allottees patents, which "shall be of legal effect, and declare that the United States does and will hold the lands thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, to his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of such period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or encumbrance whatsoever: *Provided,* That the President of the United States may in any case in his discretion extend the period." (Section 5.)

About ten years after the allotment Tiebault having continued to reside on the land and to enjoy the same conformably to the statute, began proceedings in the court of Thurston County, Nebraska, for the adoption as his children of the two relators, who were also Winnebago Indians, and a decree of adoption as prayed was entered. When ten years after the adoption Tiebault died without surviving issue, the adopted children, asserting rights as his sole heirs, sought the possession of the land embraced by the allotment and of some other land which had also been covered by an allotment made to a daughter of Tiebault, who died before him without issue and which land he had therefore inherited. This claim of heirship was disputed by nephews and nieces of Tiebault claiming to be his next of kin. The result was the commencement of proceedings in the District Court of the United States for the District of Nebraska on the part of the adopted children to obtain a recognition of their right of heirship, the nephews and nieces being among the parties defendant. Considerable testimony was taken, but no decree was entered because by the act of May 8, 1906 (c. 2348, 34 Stat. 182) and the act of June 25, 1910 (chap. 431, section 1, 36 Stat. 855) it resulted that the District Court was

without power to proceed further, exclusive jurisdiction
over the subject having been conferred by the acts in
question upon the Secretary of the Interior. The perti-
nent provisions of the act last referred to are in the mar-
gin.[1]

The theatre of the controversy was therefore by the as-
sent of the parties and of the United States transferred
to the Interior Department where testimony was begun
before an examiner, and the Secretary of the Interior, in
June, 1913, entered an order in favor of the adopted
children, holding them to be the lawful heirs of Tiebault
and entitled under the statute to the ownership and en-
joyment of the allotted lands.

The Secretary having been given authority both by
the sixth section of the act of 1906 and by the provisions
of the act of 1910 which we have quoted to reduce the
twenty-five year period, the recognized heirs applied for
an order terminating the trust period and for the issue
to them of a fee simple patent. This application was
opposed by the next of kin who had been parties to the
previous proceeding as to heirship and they also asked

---

[1] "That when any Indian to whom an allotment of land has been
made, or may hereafter be made, dies before the expiration of the trust
period and before the issuance of a fee simple patent, without having
made a will disposing of said allotment as hereinafter provided, the
Secretary of the Interior, upon notice and hearing, under such rules
as he may prescribe, shall ascertain the legal heirs of such decedent,
and his decision thereon shall be final and conclusive. If the Secretary
of the Interior decides the heir or heirs of such decedent competent to
manage their own affairs, he shall issue to such heir or heirs a patent
in fee for the allotment of such decedent; if he shall decide one or more
of the heirs to be incompetent, he may, in his discretion, cause such
lands to be sold: *Provided*, That if the Secretary of the Interior shall
find that the lands of the decedent are capable of partition to the advan-
tage of the heirs, he may cause the shares of such as are competent,
upon their petition, to be set aside and patents in fee to be issued to
them therefor."

to be permitted to re-open the controversy as to the validity of the adoption and the heirship resulting from it on the ground that as the result of newly discovered evidence they desired to show that the Nebraska decree of adoption and the previous administrative order had been obtained by fraud. Under this request it would seem that considerable testimony was taken, but it was never acted upon because the recognized heirs, the relators, disputed the authority of the Secretary to re-open the controversy on the ground that the previous departmental order recognizing them as heirs was not subject to be re-opened or reviewed and in any event that the decree of adoption of the Nebraska court was beyond the competency of the Secretary to review or set aside even upon the charges of fraud which were made. Without passing upon the merits involved in the claim to re-open, or expressing any opinion concerning the conclusiveness of the Nebraska decree, the Secretary granted the application to re-open and ordered the issues thereon to stand for future consideration. Thereupon the petition for mandamus was filed, to which a return was made alleging the facts to be as we have stated them, resulting in the judgment of the court below awarding the mandamus which is before us for review.

It is undoubted that the fee simple title to the land embraced by the allotment had not passed from the United States and that, as expressly stated in the granting act, the land was held in trust by the United States for the benefit of the allottees to await the expiration of the trust period fixed by law when the duty on the part of the United States of conveying the fee of the land would arise. It is equally undoubted under these conditions that the land was under the control in an administrative sense of the Land Department for the purpose of carrying out the act of Congress. As there is no dispute, and could be none, concerning the general rule that courts have no

power to interfere with the performance by the Land Department of the administrative duties devolving upon it, however much they may when the functions of that Department are at an end correct as between proper parties errors of law committed in the administration of the land laws by the Department, it must follow unless. it be that this case by some exception is taken out of the general rule that there was no power in the court below to control the action of the Secretary of the Interior and reversal therefore must follow. *United States* v. *Schurz,* 102 U. S. 378, 396; *Brown* v. *Hitchcock,* 173 U. S. 473; . *Knight* v. *Lane,* 228 U. S. 6. But as the court below rested its conclusion of power solely upon the existence of an assumed exception to the general rule, and as the correctness of that view is the sole ground relied upon to sustain the judgment, that question is the single subject for consideration and we come to dispose of it.

The exception rests upon two considerations: (a) the want of power of the Secretary to re-open or reconsider the prior administrative order recognizing the relators as the heirs of the deceased allottee,—an absence of authority which it is deemed resulted from the provisions of the act of 1910 which we have previously quoted in the margin; and (b) the further absence of all authority of the Secretary to disregard the decree of adoption of the Nebraska court by collaterally questioning the same in order to deprive of the status of adoption which that decree it is insisted had conclusively fixed as against all the world under the law of Nebraska.

(a) The first proceeds upon the theory that the provision of the act of 1910 to the effect that the decision of the Secretary recognizing the heirs of a deceased allottee "shall be final and conclusive" caused the prior order of the Secretary recognizing the relators as heirs to completely exhaust his power and therefore to give a character of absolute finality to such order even although the prop-

erty to which it related was yet in the administrative control of the Department because of the trust imposed by the law of the United States until the expiration of the statutory period. But we are of opinion that this is a mistaken view. The words "final and conclusive" describing the power given to the Secretary must be taken as conferring and not as limiting or destroying that authority. In other words they must be treated as absolutely excluding the right to review in the courts, as had hitherto been the case under the act of 1887, the question of fact as to who were the heirs of an allottee, thereby causing that question to become one within the final and conclusive competency of the administrative authority. As it is obvious that the right to review on proper charges of newly discovered evidence or fraud a previous administrative order while the property to which it related was under administrative control, was of the very essence of administrative authority (*Michigan Land & Lumber Company* v. *Rust*, 168 U. S. 589), it must follow that the construction upheld would not only deprive the Secretary of the final and conclusive authority which the statute in its context contemplated he should have, but would indeed render the administrative power conferred wholly inadequate for the purpose intended by the statute. And it must be further apparent that the inadequacy of authority which the proposition if accepted would bring about could not be supplied, since it would come to pass that although the property was yet in the control of the United States to carry out the trust, there would be an absence of all power both in the administrative and judicial tribunals to correct an order once rendered, however complete might be the proof of the fraud which had procured it.

But it is said that the purpose of the statute was to give the recognized heir a status which would entitle him to enjoy the allotted land and not to leave all his rights of

enjoyment open to changing decisions which might be made during the long period of the trust term and thus virtually destroy the right· of property in favor of the heir which it was the obvious purpose of the statute to protect. But in last analysis this is a mere argument seeking to destroy a lawful power by the suggestion of a possible abuse. We say this because although it be conceded for the sake of the argument only that an exercise of power which was plainly an abuse of discretion depriving of the right which the statute plainly gave would be subject to correction by the courts, such concession would be here without influence since there is no basis whatever upon which to rest an assumption of abuse of discretion.

(b) So far as the Nebraska decree is concerned the mistake upon which the proposition proceeds is obvious since, conceding the premise upon which it must rest to be well founded, it affords no ground for preventing by judicial action the exercise by the Secretary of his power to determine the legal heirs and in doing so to ascertain the existence of the Nebraska judgment, the jurisdiction *ratione materiæ* of the court by which it was rendered and the legal effect which it was entitled to receive under the law of Nebraska.

There was a suggestion in argument, which it was conceded was not made in the courts below, of an· absolute want of jurisdiction upon the theory that as the title of the allotted property was yet in the United States for the purposes of the trust, there could in any event be no jurisdiction over the cause, since in substance and effect it was a suit against the United States. As, however, the considerations involved in this proposition were absolutely coincident with those required to be taken into view in order to determine the power of the Secretary, we have not deemed it necessary to specially consider the subject.

It follows from what we have said that the court below was without jurisdiction to control the conduct of the

Secretary concerning a matter within the administrative authority of that officer and therefore that the mandamus was wrongfully allowed and the judgment awarding it must be and it is reversed and the case remanded with directions to affirm the judgment of the Supreme Court of the District of Columbia dismissing the petition for a writ of mandamus.

*Reversed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration and decision of this case.