**STOOKEY et al. v. WILBUR, Secretary of the Interior.**

No. 5484.

Court of Appeals of District of Columbia.

Argued Jan. 4, 1932.

Decided April 4, 1932.

A. R. Serven and Guy Patten, both of Washington, D. C., for appellants.

O. H. Graves and Victor H. Wallace, both of Washington, D. C., for appellee.

Before ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a judgment of the Supreme Court of the District of Columbia dismissing plaintiffs' petition praying a writ of mandamus to require the Secretary of the Interior to restore plaintiffs' names to the Gros Ventre tribal rolls of the Fort Belknap Indian Reservation in Montana.

It appears that the eight first-named plaintiffs are the children of a lawful marriage contracted in 1890 or 1891 between Emma Solomon, a Gros Ventre Indian woman of half blood, and Zack Larsen, a white man. The remaining plaintiffs are the grandchildren of Emma Larsen, being children of a marriage between Esther Larsen and Eric Eastlund, a white man.

All of the appellants were enrolled by the enrollment commission in accordance with the act of Congress approved March 3, 1921, 41 Stat. 1355, which provides as follows: "That within one year from the date of approval of this Act the Secretary of the Interior shall appoint a commission of three persons, two of whom shall be members of the Gros Ventre and Assinniboine Tribes of Indians and one member an employee of the Interior Department, who shall cause to be prepared, in such manner as they may deem advisable, a complete and final roll, to contain the names of all Indians ascertained to have rights on the Fort Belknap Reservation, Montana. Immediately upon the approval of the said roll which shall be the conclusive and final evidence of the right of any Indian of the reservation to an allotment of land, the Secretary of the Interior is hereby authorized and directed to allot pro rata, under rules and regulations and in such areas and classes of lands as may be prescribed by him, among such enrolled Indians all the unreserved and otherwise undisposed-of lands on the Fort Belknap Reservation, which trust patents shall be issued in the names of the said allottees: Provided further, That any names found to be on said roll fraudulently may be stricken therefrom by the Commissioner of Indian Affairs, with the approval of the Secretary of the Interior, at any time within one year from the approval thereof, after giving all persons interested a full opportunity to be heard; and the fraudulent allotment shall be canceled and the lands thereof be subject to disposal under the provisions of this Act: And provided further, That the land allotted hereunder shall be subject to any tribal leases existing at the date of approval of the said allotments."

When the rolls were prepared by the commission and returned, the Secretary of the Interior approved the same. Within a period of some three months the Secretary

withdrew his approval of the rolls, and thereafter struck the names of the appellants from the rolls.

The record discloses that prior to 1875 a full-blooded Gros Ventre Indian woman named Strike married a white man named Moses Solomon, and moved with her husband to Fort Benton, Montana, outside of the Indian reservation. Emma Solomon, their daughter, was born at Eagle Butte, Montana, in 1875. It is a contested question of fact whether or not Eagle Butte was within the limits of the then Gros Ventre Indian Reservation. It was found by the enrollment commission that Emma Solomon, Mrs. Larsen, was born among the Gros Ventre Indians on the then reservation. After her marriage with Zack Larsen they lived at various places in close proximity to the reservation, and in 1916 moved with their children back onto the restricted Gros Ventre Reservation. It thus appears that she and her husband adopted the customs of civilized life and provided for the education of their children, living during this time in the immediate vicinity of the reservation and, it may be assumed, sustaining close relations with the tribe.

The act of Congress of June 7, 1897, 30 Stat. 62, 90 (25 USCA § 184), applying to Indians in general, provides in part as follows: "That all children born of a marriage heretofore solemnized between a white man and an Indian woman by blood and not by adoption, where said Indian woman is at this time, or was at the time of her death, recognized by the tribe shall have the same rights and privileges to the property of the tribe to which the mother belongs, or belonged at the time of her death, by blood, as any other member of the tribe, and no prior Act of Congress shall be construed as to debar such child of such right."

In accordance with this act the Secretary, basing his decision on the case of Oakes et al. v. United States (C. C. A.) 172 F. 305, enrolled Mrs. Larsen but refused to enroll her children and grandchildren. It will be observed that there is a sharp and well-defined issue of fact involved in this case, also an interpretation of the power and authority of the Secretary under the statute to correct the rolls. We think the Secretary's power and authority to correct the rolls where mistake or inadvertence appears is well settled. Lowe v. Fisher, 223 U. S. 95, 32 S. Ct. 196, 56 L. Ed. 364.

In the case of Lane v. Mickadiet, 241 U. S. 201, 36 S. Ct. 599, 601, 60 L. Ed. 956, the court, construing the words "final and conclusive," employed in the Act of June 25, 1910, 36 Stats. 855 (25 USCA § 372), authorizing the Secretary of the Interior to ascertain heirs of deceased Indians, and providing that his decision thereon "shall be final and conclusive," said: "The words 'final and conclusive' describing the power given to the Secretary must be taken as conferring, and not as limiting or destroying, that authority. In other words they must be treated as absolutely excluding the right to review in the courts, as had hitherto been the case under the Act of 1887, the question of fact as to who were the heirs of an allottee, thereby causing that question to become one within the final and conclusive competency of the administrative authority."

In this view of the case we are of the opinion that the writ of mandamus cannot be invoked. The duty here imposed upon the Secretary cannot be regarded as a mere ministerial act. It called for the determination of issues of fact and an interpretation of the law vesting him with authority, and whether his conclusions are right or wrong they cannot be reviewed in this proceeding or controlled by mandamus.

The judgment is affirmed.