**ARENAS v. UNITED STATES et al.**

No. 13012.

United States Court of Appeals Ninth Circuit.

May 13, 1952.

John W. Preston, John W. Preston, Jr., Oliver O. Clark, Jack R. Mills and David D. Sallee, all of Los Angeles, Cal., for appellant.

A. Devitt Vanech, Asst. Atty. Gen., John F. Cotter, Edmund B. Clark, Attorneys, Department of Justice, Washington, D. C., Walter S. Binns, U. S. Atty., Los Angeles, Cal., Irl D. Brett, Sp. Asst. to Atty. Gen., for appellees.

Before STEPHENS, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant, who is an enrolled member of the Agua Caliente Band of Mission Indians of California, brought this suit against the United States and Eleuteria Brown Arenas, seeking a judgment cancelling a patent whereby the United States conveyed in trust to the last named defendant an undivided one-half interest in lands on the reservation of said Band of Indians near Palm Springs, California. The lands in question constituted the allotment of Guadalupe Arenas, wife of appellant, prior to her death in 1937. Appellant also asked that an equitable title to these lands be quieted in him as sole heir of his deceased wife, Guadalupe.

Appellant based his action upon a judgment, affirmed upon appeal here, which he recovered in the same court in an earlier suit against the United States. United States v. Arenas, 9 Cir., 158 F.2d 730. He says that the subsequent trust patent to Eleuteria Brown Arenas, here called appellee, was repugnant to that judgment and should be cancelled as void.

The former judgment was entered in 1945 in an action which the present appellant had brought pursuant to § 1 of the Act of February 6, 1901, 31 Stat. 760, 25 U.S.C.A. § 345.[1] In that action appellant sued the United States to establish, among other things, that he was entitled to trust patents for his own allotment and also for an allotment selected by his deceased wife of whom, he alleged, he was the sole heir. The court entered judgment that he was entitled to both allotments,—that in addition to being entitled to the allotment selected by himself, he was entitled "as the sole surviving heir at law and next of kin" of Guadalupe Arenas to a trust patent for the allotment selected by her.

The trial court found that in February, 1949, the Secretary of the Interior caused to be issued a trust patent for the lands in the Guadalupe Arenas allotment to the heirs of Guadalupe Arenas without naming the heirs in the patent. It was found that in July, 1949, under authority conferred by § 1 of the Act of June 25, 1910, 36 Stat. 855, 25 U.S.C.A. § 372,[2] an examiner of inheritance designated by the Secretary of the Interior held that the appellee, "daughter (adopted by the decedent in accordance with the established Indian tribal custom)" was entitled to an undivided one-half interest in Guadalupe's allotment as an heir of Guadalupe, and that the appellant was entitled to the remaining half interest therein as the other heir; that this determination of the heirs of Guadalupe Arenas was made by an examiner of inheritance having jurisdiction

---

1. "All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him * * *: Provided, That the right of appeal shall be allowed to either party as in other cases."

2. The material portions of said section are as follows: "When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive."

over the lands of the Indian reservation in question, in proceedings regularly held after notice to and participation therein by both the appellant and the appellee.

Written notice of the examiner's decision and order was given to both appellant and appellee. The notice recited that the decision would become final within 60 days of the notice, and that interested persons might file petition for rehearing within that time. No application for rehearing was made and accordingly on November 8, 1949, the United States issued the trust patent declaring the appellee the owner of an undivided one-half interest in Guadalupe's allotment. This action was brought to have that trust patent annulled and set aside.

■ The trial court held[3] that the determination made in appellant's former action that he was the sole heir of Guadalupe was not binding upon the appellee or determinative of any issue in this action for the reason (1) that the appellee was not a party to that action or represented therein; and (2) that the court had no jurisdiction to enter a judgment determining heirship for the reason that the enactment of the Act of June 25, 1910, supra, had operated to withdraw any such jurisdiction from the courts; that the judgment, to the extent that it purported to determine that Lee Arenas was the sole heir of Guadalupe, was void ab initio, in that exclusive jurisdiction to determine that matter was vested in the Secretary of the Interior by the Act mentioned; and that the decision of the examiner of inheritance that the heirs at law of Guadalupe Arenas were Lee Arenas and Eleuteria Brown Arenas, each taking an undivided one-half interest, was in full force and binding upon the appellant and res adjudicata as to all the parties to this action. Accordingly judgment was entered affirming the appellee's right to an undivided one-half interest in said lands and enjoining the appellant from interfering therewith.

We think that the judgment of the District Court was correct in all respects and must be affirmed.

■ Appellant argues that although the present appellee was not named as a defendant in the former action, yet that judgment was binding upon the United States which was trustee for the present appellee, and as such representing her interest. Therefore, says appellant, the appellee by virtue of privity is bound through her trustee. Such argument is wholly without force. Not only was the present appellee not named in that former action but her existence was not mentioned therein and her rights to the property were not in issue before the court. The United States was a defendant in that action, resisting appellant's claim and asserting that no valid allotment had been made. In no sense was the United States appearing as trustee for the present appellee. Appellant's argument in this respect is foreclosed by Ya-Koot-Sa v. United States, 9 Cir., 262 F. 398.

■ Not only did the court lack jurisdiction of the appellee but it lacked jurisdiction of the subject matter as well. That the enactment of June 25, 1910 operated to withdraw from the courts jurisdiction to ascertain the heirs of the dead allottees holding under trust patents, was determined in Hallowell v. Commons, 239 U.S. 506, 36 S. Ct. 202, 60 L.Ed. 409. Cf. Lane v. U. S. ex rel Mickadiet, 241 U.S. 201, 36 S.Ct. 599, 60 L.Ed. 956; United States v. Bowling, 256 U.S. 484, 41 S.Ct. 561, 65 L.Ed. 1054; First Moon v. White Tail, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565. Appellant attempts to avoid the effect of these decisions by contending that since he had the right to maintain the former action under the provisions of the Act of February 6, 1901, supra, it was proper for the court in that action to determine the incidental question there presented, namely, his asserted sole heirship. He says that when the court undertook to determine that incidental issue, it necessarily considered and determined the question of its own jurisdiction to make that determination. Appellant argues that the court's determination that it had jurisdiction, although it may have been erroneous, was nevertheless not void or subject to collateral attack.

■ We think that the former judgment here in question does not fall within the

3. The opinion is reported in D.C., 95 F. Supp. 962.

category of cases in which the court's determination of its own jurisdiction is not subject to collateral attack. Typical of such cases are those in which the court determines the existence of diversity of citizenship. On the other hand, there are cases in which it can be said that a district court is, regardless of its own findings, necessarily without jurisdiction, as for example where the court assumes to act in a matter where no statute grants jurisdiction or authorizes the court to proceed. The distinction between these two types of cases is discussed at length and appropriate illustrations given in Noble v. Union River Logging Railroad, 147 U.S. 165 at pages 173, 174, 13 S.Ct. 271, 37 L.Ed. 123. In Stoll v. Gottlieb, 305 U.S. 165, 175, 59 S.Ct. 134, 139, 83 L.Ed. 104, the court referred to an earlier decision illustrative of the class of cases where "necessarily there is no power in the District Court". The case referred to is one in which a corporation alleged to be in the insurance business was adjudicated an involuntary bankrupt "in the teeth of the Bankruptcy Act, 4b, 11 U.S.C.A. § 22(a), that 'any moneyed * * * corporation, except [an] * * * insurance * * * corporation, * * * may be adjudged an involuntary bankrupt.' "

We think that in view of the rule declared in Hallowell v. Commons, supra, that it must be said that the incidental determination of heirship in the former action was in the teeth of the provisions of the Act of June 25, 1910, and therefore the court in the present action was at liberty to disregard it.[4]

Appellant further contends that this case is not ruled by the doctrine of Hallowell v. Commons, supra, for the reason that the Act of June 25, 1910, is not applicable here. Appellant argues that that section gives the Secretary of the Interior authority to determine heirship only in a case where allotment was made and a trust patent was issued to the Indian during his lifetime and where the Indian died during the trust period. Appellant points to the fact that although Guadalupe Arenas selected her allotment, and attempted to procure a trust patent therefor, yet the Secretary took no action thereon until after Guadalupe's death and hence when she died no trust patent had been issued to her. Appellant says that where, as here, an allotment had been unlawfully denied to an Indian, the district court had jurisdiction of the subject matter and parties in a suit under the Act of February 6, 1901, supra;—that the exclusive jurisdiction granted to the Secretary by the Act of June 25, 1910, is confined to a case where the deceased Indian is one to whom a trust patent has been issued during his lifetime.

We think that the statutes here in question do not permit the drawing of this distinction. The language of § 1 of the Act of June 25, 1910, supra, lends no color to the suggestion that it has any such limited application as the appellant here suggests. The purpose of its enactment and the policy which it was intended to introduce are disclosed in Hallowell v. Commons, supra, and the legislative history there outlined would tend to negative any intent to qualify the generality of the section's application to problems of heirship in the case of any allotment. On the other hand, the Act of February 6, 1901, supra, expressly provides that when, under that section, a judgment in favor of a claimant to an allotment of land has been made, it "shall have the same effect * * * as if such allotment had been allowed and approved" by the Secretary of the Interior. The action which was for-

---

4. The District Court cited Restatement, Judgments, § 71, which is as follows: "Where a court has incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly." The court also noted the illustration given under that section as follows: "Thus, if a woman brings an action against a man to recover for services, and he defends on the ground that she is his wife, the determination of the question whether she is his wife is not conclusive in a subsequent action brought by one of them against the other for divorce or for annulment of the marriage, if the first court had no jurisdiction to determine these matters." [95 F.Supp. 973]

merly brought under that Act was one which could properly be brought by the representative of the estate of Guadalupe Arenas. Nothing in the section required or suggested the necessity of a determination of heirship therein. The judgment in the former action determined that Guadalupe was entitled to her allotment as of June 9, 1927, a date long prior to her death; and under the provisions of the section last referred to, that adjudication had the same effect as if an allotment of that date had been allowed and approved by the Secretary.

Finally, it is contended that although the decision authorized by the Act of June 25, 1910, is declared to be "final and conclusive", yet such a determination may be set aside in this action when shown to be contrary to law or to have been wholly unsupported by any evidence.

The allotment here in question is still held in trust under the administration of the Secretary of the Interior. Lane v. Mickadiet, supra, 241 U.S. 201, 36 S.Ct. 601, is authority to the effect that under those circumstances and while the Secretary's administrative duties continue, the words "final and conclusive" in this Act "must be treated as absolutely excluding the right to review in the courts" Furthermore, appellant here confronts an obstacle peculiar to himself in that he failed to exhaust his administrative remedies and cannot now question the correctness of the administrative decision. Milheim v. Moffat Tunnel Dist., 262 U.S. 710, 723, 43 S.Ct. 694, 67 L.Ed. 1194; McGregor v. Hogan, 263 U.S. 234, 238, 44 S.Ct. 50, 68 L.Ed. 282; Goldsmith v. Bd. of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 70 L.Ed. 494.

In any event, we think the record fails to show the infirmities which appellant charges to the examiner's determination. Appellant points to the provisions of the General Allotment Act, Title 25 U.S.C.A. § 348, indicating that an allotment passes to the allottee's heirs "according to the laws of the State or territory where such land is located". Appellant says that the law of California does not contemplate any such adoption "in accordance with established Indian tribal custom" as that which the examiner found.

We think that appellee has correctly answered this contention by pointing out that all that the General Allotment Act incorporated was the California succession or descent statute and that a statute in respect of adoption is something entirely different. Cf. Hallowell v. Commons, 8 Cir., 210 F. 793, 800. We are satisfied that the record fails to disclose any manifest insufficiency, either in fact or in law, in the examiner's decision.

The judgment is affirmed.