SEALASKA CORPORATION, Plaintiff,

v.

Donna M. ROBERTS, Individually and on behalf of all others similarly situated, and Thomas Kleppe, Secretary of the Interior, or his successor, Defendants.

Civ. No. J75-9.

United States District Court,
D. Alaska.

March 17, 1977.

Lawrence T. Feeney, Faulkner, Banfield, Doogan & Holmes, Juneau, Alaska, for plaintiff Sealaska.

Drew Peterson, Alaska Legal Services Corp., Ketchikan, Alaska, for defendant Roberts.

Joseph A. Kalamarides, Settles & Kalamarides, Anchorage, Alaska, for defendant Doug Luna.

U. S. Atty. G. Kent Edwards, Anchorage, Alaska, for defendant Sec'y of Interior.

Harry B. Plotis, Lynnwood, Wash., for defendant individual.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on the class defendant's motion for summary judgment. The present case involves the interpretation of Section 5(a) of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1604(a) (hereinafter ANCSA or Act) as amended by Pub.L. 94–204, 89 Stat. 1145. The central issues presented by this motion are whether the Secretary of the Interior has the power to disenroll Natives included on the roll he was required to prepare by December 17, 1973, and his further disenrollment power over applicants who were given an additional year to enroll by the 1976 amendments to the Act. As the court holds that the Secretary does have this disenrollment power several subsidiary issues are raised which will be considered in the latter portion of this memorandum.

This case is in the nature of an interpleader action. Plaintiff Sealaska Corporation is one of twelve Regional Corporations organized pursuant to the ANCSA. The action was filed because plaintiff was being subjected to conflicting legal claims. Certain Alaska Natives who had been enrolled in plaintiff corporation were suing plaintiff in State Court to compel distributions to them as shareholders. The Secretary, however, had placed the plaintiff on notice that he intended to challenge the eligibility of

the members of defendant class and that distributions to defendant class would be at plaintiff's risk.

*Disenrollment Power—1973 Roll*

The starting point for resolution of this case is Section 5(a) of the Act. 43 U.S.C. § 1604(a). That section provides:

"The Secretary shall prepare within two years from December 18, 1971, a roll of all Natives who were born on or before, and who are living on, December 18, 1971. Any decision of the Secretary regarding eligibility for enrollment shall be final.

Pursuant to this statutory authorization the Secretary prepared a roll which was certified to Congress, but with the proviso that "it was subject to appeal decisions and other legal determinations." Congress reopened the enrollment period for a period of one year in 1976. Those amendments and the regulations promulgated thereunder are considered at a later point in this memorandum.

Defendant class and plaintiff join in the position that the Secretary is without the power to disenroll any member of the roll certified to Congress on December 17, 1973. Their position is based on two separate contentions. They first rely on the statutory language itself which states that the decision of the Secretary "shall be final." These parties maintain that the language of finality relates *inter alia* to the ability of the Secretary to alter the roll. As the second basis for their conclusion the parties maintain that the crucial role of the roll in administering the Act is persuasive evidence of the Congressional intent that no changes should be allowed after December 17, 1973. In opposition the Secretary has cited several cases which he maintains limit the affect of the finality language. He also points to countervailing policies which would appear to support disenrollment.

With one exception the court has found little aid in the cases cited by the Secretary. Those cases, which dealt with similar finality language in other Acts generally stand for a point of law which is not contested herein, or are factually and legally distin-guishable. Many of the cases merely stand for the proposition that the finality language creates a decision of the Secretary which is not subject to judicial review. *See Attocknie v. Udall,* 390 F.2d 636, 637 (10th Cir. 1968) cert. den. 393 U.S. 833, 89 S.Ct. 104, 21 L.Ed.2d 104; *Heffelman v. Udall,* 378 F.2d 109, 112 (10th Cir. 1967). Neither defendant class nor plaintiff dispute this affect of the finality language in the present statute.

A second line of cases relied on by the Secretary are not persuasive. *Lowe v. Fisher,* 223 U.S. 95, 32 S.Ct. 196, 56 L.Ed. 364 (1912) involved a situation where under circumstances similar to those in the present case, the Secretary removed an Indian from a roll *prior* to the date set by Congress for the final roll. *Id.* at 106–07, 32 S.Ct. 196. Indeed, the case has been cited as suggesting the proposition that removal after the date for the final roll would have been improper. *Duncan Townsite Co. v. Lane,* 245 U.S. 308, 311, 38 S.Ct. 99, 62 L.Ed. 309 (1917); *Stookey v. Wilbur,* 61 App.D.C. 117, 58 F.2d 522 (1932) which upon first glance appears to be directly on point is based to a significant extent on a misreading of *Lowe, supra.*

The one case which does provide support for the Secretary's position is *Lane v. Mickadiet,* 241 U.S. 201, 208–09, 36 S.Ct. 599, 60 L.Ed. 956 (1916); *see also Hanson v. Hoffman,* 113 F.2d 780, 790 (10th Cir. 1940). In *Lane* the Secretary was to determine who was the proper heir of an Indian under an allotment statute. Such a determination was to be "final and conclusive." *Id.,* 241 U.S. at 206 n. 1, 36 S.Ct. 599. Following such a determination the Secretary reopened the administrative hearing. This reopening was challenged and the court held that as long as the Secretary had the duty to administer the land in question as a trust that he had the concomitant power to reevaluate any prior determinations. *Id.* at 208–10, 36 S.Ct. 599. The "final" language was held only to preclude judicial review.

There are several differences between the *Lane* case and the present case. The first is that in *Lane* there was a trust

relationship but such a relationship has been specifically disavowed in the ANCSA. 43 U.S.C. § 1601(b). However, the Secretary still maintains administrative authority over portions of the Alaska Native Fund. 43 U.S.C. § 1605. As the Court in *Lane* stated, it would be anomalous to give the Secretary authority over the fund yet deny him the power to correct his errors.

A second distinction of much greater consequence is the fact that in *Lane* the re-evaluation had only a minimal impact on a few individuals. Here the roll was to be prepared by a specified date and other significant duties were based on the roll which had an effect on the entire operation of the Act. While Congress has specifically shielded the land distribution under the Act from disruption due to disenrollment, 43 U.S.C. § 1604, Pub.L. 94–204, § 8(d), *see* pages 1258, 1259, *infra*, this has not been done as to monetary distributions. Accordingly, the court must turn to the differing policies of purity and finality in an attempt to ascertain which of these should be given greater weight. If finality is more important under the Act then *Lane, supra,* would not be of significant value as the importance of finality was not accorded great weight in that case. If, however, purity is more important then *Lane* is considerably more persuasive as that factor was central to the holding therein. In addition, of course, the two opposing considerations of finality and purity which may affect the applicability of *Lane* are precisely the same considerations which both sides mount as their Congressional intent argument.

■ The Congressional intent on this issue must be divined through an overview of the Act rather than through any specific references to the legislative history. Defendants class suggests that the change from an earlier bill which provided a six month non-reviewable temporary roll and a five year reviewable final roll to the present scheme is evidence of the Congressional intent to opt for finality. To a certain extent the court agrees. This change clearly reflects Congress's intent to give the Secretary the final word and preclude judi-

cial review. Beyond that, however, the intent of Congress in rejecting the two-step plan presents the same issue with which the court now deals, i. e., what is the Secretary's power after the roll is certified.

The arguments on either side can easily be summarized. The parties urging finality point to the central importance of the roll in the Act and urge that it must have been necessary to have a fixed roll at an early stage. The opponent points to the fact that it would be contrary to the purposes of the Act to continue to pay benefits to those who are not entitled to them. The court finds this latter consideration to be more important under the Act.

The ANCSA was passed to provide the Alaska Natives with a just and equitable compensation for land claims based on aboriginal title. 43 U.S.C. § 1601(a). It would clearly work against the very essence of the Act to provide benefits to those who are not entitled to them under the Act. In this scheme where a fixed amount of compensation has been awarded the parties hurt by the inclusion of non-eligible Natives would be those who are eligible to receive benefits. Thus purity of the rolls is exceedingly important under the ANCSA.

■ As a direct attack on this reasoning plaintiff and defendant class maintain that those who are on the rolls due to fraud could be removed in an independent court action. These parties would have the roll of the Secretary be final subject to judicial disenrollment on the basis of fraud. The court finds several difficulties with such a proposal. Initially the court is not as certain as the parties that a final agency action where there is generally no right to judicial review can be set aside on the basis of fraud. *See* Davis, *Administrative Law Treatise*, 28.01 *et seq.; Schilling v. Rogers,* 363 U.S. 666, 676–77, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960). Although some older cases have so held they predated the APA. *See e. g. Campbell v. Wadsworth*, 248 U.S. 169, 174, 39 S.Ct. 63, 63 L.Ed. 192 (1918). Moving beyond this threshold question, however, the court finds significant problems with the avenue suggested. By con-

cluding that a person could be removed from the roll in cases of fraud the parties concede that there may be some changes in the final roll. The question then becomes who may do the disenrolling. If jurisdiction were removed from the Secretary on December 17, 1973, the removal would only be at the end of a judicial proceeding. This would further complicate what has become one of the major sources of litigation in the Alaska Federal Courts. It would also run counter to the express desire of Congress which was to have those who are entitled to benefits under the Act obtain them "without litigation." 43 U.S.C. § 1601(b).

Additionally, the removal of names for fraud does not allow removal of an individual for mistake or other possible reasons. Plaintiff and defendant class adopt a position that would allow such individuals to remain on rolls. While again older cases have allowed such removal by the court, *see e. g. Campbell v. Wadsworth, supra,* those cases are also open to much doubt under the APA. *See Schilling v. Rogers, supra.* It seems entirely contrary to the Act to allow such persons to continue to receive benefits and thereby reduce the benefits of other qualified recipients.

The main thrust of the argument of the parties which assert the need for finality is that the Native roll plays an important part in the administration of the ANCSA. In the context of this case the problem is more apparent than real. The parties are certainly correct that the roll is an essential part of the Act in terms of the distribution of land and money. With respect to land Congress amended the Act in 1976 to avoid any affects of disenrollment.[1] 43 U.S.C. § 1604, Pub.L. 94–204, § 8(d). With respect to monetary benefits future payments can easily be adjusted to reflect the revised roll. The effect on past monetary benefits is dealt with at a later point in this memorandum.

While it is true that Congress expressed the desire to make awards under the Act "with certainty," 43 U.S.C. § 1601(b), this disenrollment procedure does not violate that mandate. The awards under the Act will continue to be paid by the federal government for quite some time. *See* 43 U.S.C. § 1605(a). The Secretary has adopted a regulation which will end the disenrollment by July 31, 1977, for those improperly included on the first roll. 25 C.F.R. § 43h.15(c). This period seems reasonable and as it appears that plaintiff Sealaska has been able to operate successfully even if with some uncertainty during the pendency of this action it does not seem that the interests of finality will be subverted by waiting the few remaining months.

As the court finds that purity is more important under the Act than is finality the *Lane* decision applies to this case to add judicial support to the perceived legislative intent. The one area where *Lane* does not apply is in the area of benefits previously paid which are being held by plaintiff pending resolution of this suit. As to those funds the Secretary has relinquished administrative control and, *hence,* the rationale of *Lane* is inapplicable. As to these funds, however, the court finds other support for the conclusion that they are subject to retroactive change.

The amendments to the Act in 1976 specifically stated that disenrollment was to have no effect on land entitlements,[2] 43 U.S.C. § 1604, Pub.L. 94–204, § 8(d). Although argued to the contrary by defendant class one can only assume from this enactment that disenrollment was to affect monetary distributions. It is an old maxim that "inclusio unius est exclusio alterius." By specifically disallowing the effect of disenrollment to the lands benefits it must be assumed that if disenrollment is possible it has a retroactive affect on other benefits. Based on the principle of purity and this subsequent enactment the court finds that

---

1. While at first blush this might seem to indicate a Congressional acquiescence in disenrollment that is apparently not the case. In enacting this legislation Congress specifically stated that it was not passing on the authority to disenroll. U.S.Code Cong. and Admin.News, 94th Cong. First Sess., p. 2395.

2. See note 1, *supra.*

absent some other factor the disenrollment is to have a retroactive effect on monetary benefits. As to the effect of the Secretary's regulation attempting to nullify this problem, see pages 1259–1260, *infra*.

## Disenrollment Power—1976–1977 Applications

By amendment Congress reopened the application period for the Alaska Natives from January 2, 1976, to January 2, 1977. 43 U.S.C. § 1604; Pub. L. 94–204, § 1(a): The Secretary wishes to conduct disenrollment proceedings on these applications until January 2, 1978.[3] 25 CFR § 43h.15(c). For all the reasons stated previously the disenrollment proceedings on these applications will be allowed. With these enrollees, however, the Secretary's position is even stronger.

With these Natives the Secretary was to accept all applications submitted by January 2, 1977. There was no date set, as in the original Act, for the certification of a roll. By adoption of certain regulations the Secretary has created a self-imposed burden of certifying a final roll soon after one year after the final application date. 25 CFR 43h.15(c). This time period is entirely reasonable as all contests to this roll will be initiated within a year of the final application. As to this roll, therefore, the Secretary's power is on a substantially sounder basis than it was on the earlier roll, and disenrollment is clearly proper.

## Interim Payments

The next issue which arises is whether the Regional Corporations must at the present time make payments to those individuals whose enrollment may be challenged. Under section 7(j) of the Act, 43 U.S.C. § 1606(j), the Regional Corporations are directed to distribute certain funds to their shareholders. Plaintiff has withheld distribution of these funds to those who the Secretary has indicated may be subject to disenrollment.

At the outset of this litigation the plaintiff apparently based this withholding of funds on two lines of argument. The first was that to distribute these funds to persons who might be later disenrolled would be unfair to those who were entitled to the funds. The second theory was that the Regional Corporation might face some type of liability if it wrongfully paid funds to subsequently removed shareholders. As will be developed *infra* the second basis has been substantially altered by the 1976 amendments to the Act and regulations promulgated thereunder.

The argument for withholding funds pending disenrollment on the basis that distribution to those not qualified would be unfair to those who are qualified tracks very closely with the Congressional intent issue, *supra*. Under the Act there is a certain finite sum which will be distributed. Each payment to an ineligible person decreases the amount paid to those who are eligible. Thus payment of such funds would clearly violate Congress's intent in passing the Act.

Defendant class asserts, however, that as they presently are shareholders they are entitled to the funds. Such an argument overlooks one essential point. The status of these persons as shareholders presently is being challenged. While it is true that plaintiff admitted that members of the defendant class were shareholders that admission apparently has not been made by the Secretary. As plaintiff joined in the contention of defendant class that disenrollment was not allowed under the Act, it is natural that it would contend that these persons were shareholders.

The court concludes, therefore, that when the status of the shareholders are properly subject to challenge the intent of the Act counsels against payment to the parties questioned. Those who are properly on the rolls will soon be receiving their share under the Secretary's deadlines and their in-

---

**3.** Although the government's brief stated the date to be July 1978, pg. 2, it is assumed that this was an error. The government should notify the court if the latter date is in fact the proper date and show some authority for that position.

convenience is outweighed by the damage that would be caused by a contrary ruling.

■ It was apparently plaintiff's position at the outset of this litigation that payment to those who were subsequently removed would subject them to liability for those funds and that accordingly payment should be withheld. With the passage of the 1976 amendments to the Act the Secretary promulgated a regulation removing any threat of liability for past payments to those subsequently removed. 43 CFR § 4.1011(b). Plaintiff now maintains that this regulation is invalid and that it may still be subject to liability for such payments.

The 1976 amendments to the Act provided that land distributions would not be affected by disenrollment. 43 U.S.C. § 1604, Pub L. 4–204, § 8(d). Apparently in response to this section the Secretary passed the regulation in question extending similar protection to monetary distributions. The court has previously held that the passage of the 1976 amendments protecting only land distributions from the effects of disenrollment evidences a Congressional intent to allow past monetary distributions to be affected by disenrollment. *See* page 1259, *supra.* Thus, the regulation promulgated by the Secretary is contrary to the intent of the Act and is a nullity.[4] *Dixon v. United States,* 381 U.S. 68, 74, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

The contention of defendant class that if the Secretary has the power to disenroll he must have the concomitant power to regulate the effects of disenrollment is not well taken. The power to disenroll is mandated by the Congressional intent of purity of the rolls. The desire to establish purity does not give the Secretary unfettered discretion over all aspects of disenrollment. Quite the contrary, the Secretary's actions must be in conformity with the intent of Congress and the regulation in question does not fulfill that command.

■ Accordingly, the plaintiff's initial fear that it might be exposed to liability for payments to subsequently disenrolled Natives remains a possibility.[5] Based on this possibility and the Congressional intent of distributing funds only to those who qualify under the Act the court holds that plaintiff may withhold the funds pending resolution of disenrollment proceedings.[6]

*Disenrollment—Solicitor's Roll*

■ Defendant class asserts that even if the Secretary has the power to disenroll those certified by himself, he does not have the authority to disenroll those enrolled in another fashion. 25 CFR 43h.8(e) provides that certain enrollment decisions may be made by ". . . the Regional Solicitor on behalf of the Secretary and shall be final." Defendant class again seizes upon the "shall be final" language in an attempt to assert that the Secretary cannot now alter these rolls. The court finds that this language should be interpreted in the same fashion as the same language previously discussed and that it relates only to the availability of judicial review. As the regulation expressly states that the Regional Solicitor is acting for the Secretary, the Secretary has the same power to disenroll these persons as he has over the persons on rolls prepared by himself.

*Disenrollment Procedure*

■ The final contention of defendant class is that the regulations prescribing the procedure for disenrollment, 43 CFR 4.1000 *et seq.,* violate the Due Process Clause of the Constitution. In this respect the defendant class challenges what it views as the "overly arbitrary and formalistic" requirement of the regulations. The essence

---

4. In this litigation the Secretary expressly has taken no position on this issue.

5. The court does not pass on the merits of the issue of liability for such payments made by any Regional Corporation nor upon a defense based upon reliance upon the questioned regulation, but only concludes that liability is a possibility.

6. The court, of course, assumes that the Secretary will notify plaintiff promptly when a determination has been made that an individual is eligible so that the funds can be received.

of defendant class's attack is upon the formality of the proceeding. In this respect this case is somewhat unique. Most of the cases dealing with this type of challenge have presented a situation in which the proceeding challenged was either non-existent or did not provide an impartial fact-finding process. *See e. g. Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Pence v. Kleppe*, 529 F.2d 135 (9th Cir. 1976). The present regulations, however, provide for an administrative hearing that is in most respects identical to a civil trial. It would indeed be anomalous for the court to hold that Due Process is violated by these procedures which virtually parallel the normal civil case. As has previously been stated, there is no right to judicial review of the Secretary's findings. It is accordingly extremely important that the individual who is to be disenrolled is given an ample opportunity to defend his position. These regulations provide that opportunity,[7] and fully satisfy Due Process considerations. As is pointed out by the Secretary all of the requirements mentioned by the Supreme Court in *Goldberg* are provided in these regulations.

While the various courts that have dealt with this problem have stated that the precise requirements of any hearing must be determined by the circumstances, such a statement generally would be interpreted to *allow* the Secretary to adopt less formal procedures. This language, however, should not be interpreted to *require* less formal procedures when the Secretary has determined that a quasi-judicial proceeding is appropriate.

The parties have stated that there are no material issues of fact remaining in this case. However, only one summary judgment motion has been submitted and it

must be denied. If the parties desire that a judgment be entered herein they should present a summary judgment motion and a judgment form in conformity with this memorandum.

Accordingly IT IS ORDERED.

THAT defendant's motion for summary judgment is denied.

---

7.  The court has considered the challenge to the regulations as a whole because it is virtually certain that they will be applied to anyone whose enrollment is contested. However, the court entertains serious doubts as to the standing of these parties to contest the notice requirements, 43 CFR 4.1002 & 4.1004, and the ripeness of these issues for adjudication. It is entirely possible that no person will fail to

answer within the allotted time and therefore, no one may be injured by the operation of these requirements. A similar issue of standing and ripeness presently is pending before the court in *Pence v. Andrus*, A74–138 Civil. These regulations are distinguishable from those in *Pence*, however, as a "default" herein may be set aside. 43 CFR 4.1005(f).