**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Boyd Henson CAMPBELL, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Lonnie JOHNSON, Defendant-Appellant.**

**Nos. 71–1055, 71–1056.**

United States Court of Appeals,
Tenth Circuit.

Jan. 4, 1972.

448

Jack Speight, Asst. U. S. Atty. (Richard V. Thomas, U. S. Atty., and Tosh Suyematsu, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Arthur T. Voss, Denver, Colo., (Alan B. Johnson, Cheyenne, Wyo., on the brief), for defendants-appellants.

Before PHILLIPS, HOLLOWAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Campbell and Johnson were charged in separate, one count indictments with unlawfully transporting in interstate commerce a stolen 1969 Chevrolet automobile, knowing the same to have been stolen, and in the same count each was also charged with aiding and abetting the other in such transportation. Prior to trial the two indictments were consolidated for purposes of trial and the ensuing trial by jury culminated in guilty verdicts as to both defendants. Each now appeals.

Counsel poses the issues here to be resolved as follows: (1) Did the trial court's denial of Johnson's motion for a continuance deny Johnson the effective assistance of counsel and a fair trial; (2) was the testimony of Officers McGowan and Lawson of the Charlotte, North Carolina, Police Department relevant and material to the issues of the case and did it prejudice the defendants before the jury; and, (3) were the jury verdicts supported by substantial evidence or by

inferences reasonably flowing from the evidence? Before addressing ourselves to each of the matters thus raised, brief reference to the evidence adduced upon trial will place the issues in context.

On June 1, 1970, a garage in Reidsville, North Carolina, was broken into and the 1969 Chevrolet automobile described in the indictments was stolen therefrom. On June 26, 1970, Campbell and Johnson were arrested at the Bronze Boot Motel in Cody, Wyoming. The manager of the Bronze Boot Motel testified that Johnson and Campbell checked into the motel on June 15, 1970, with Johnson registering for both of them under the name of "Joe Jackson," and that at the time they registered at the motel they were driving a Chevrolet which was stipulated to be the vehicle earlier stolen from the garage in Reidsville.

According to the motel manager, the two defendants remained at the Bronze Boot for two days, checked out for two days and then returned to the motel where they were staying when arrested. The motel manager also testified that he saw the defendants driving the vehicle in question on the streets of Cody. When the defendants were arrested the vehicle was parked at the motel adjacent to the defendants' room and upon inquiry Johnson advised the arresting officer that the "keys were in the car." Upon cross-examination, the motel manager testified that only Johnson and Campbell checked into the motel, and that he "never saw a blond stocky built fellow" at or around the motel in company of the defendants.

The testimony of Officers McGowan and Lawson, of the Charlotte, North Carolina, Police Department, was that each saw the defendants together in Charlotte, North Carolina, on May 31, 1970.

The defendants' evidence was to the effect that both defendants were indeed in Charlotte on May 31, 1970, but that neither had anything to do with the theft of the car in question from the garage in Reidsville. Rather, according to Johnson, he met a "short, chunky, blond headed" man in a bar in Charlotte

on or about June 4, 1970, who said he had his uncle's car with his uncle's permission and invited Johnson to accompany him on a trip "out west." Johnson agreed and the two headed west, picking up Campbell, who was a friend of Johnson's in Canton, Ohio.

Campbell did not testify in his own behalf, but his brother and sister-in-law testified that he (Campbell) arrived at their home in Maryland on June 1, 1970. According to them, Campbell stayed in their home overnight and left the next day without announcement for an undisclosed destination. It was on this general state of the record that the jury returned verdicts of guilty as to both defendants.

Counsel first argues that the trial court erred in denying Johnson's motion for a continuance filed the day before the date previously set for trial. Although the record before us is not entirely clear, it would appear that there was at least a degree of confusion on the part of court and counsel as to just when the case was scheduled for trial.

The record contains a statement by the trial judge that his clerk had sent out a notice of trial on November 25, 1970, notifying counsel that the case was set for trial on December 9, 1970. This was done even though Johnson had not as of November 25, 1970, been arraigned. And it would appear from the record that when counsel was appointed to represent Johnson (sometime prior to December 1, 1970), both he and Johnson had been advised that the case was set for trial on December 9, 1970. In any event, Johnson appeared in court on December 1, 1970, with appointed counsel, at which time he entered a plea of not guilty. It was on this occasion that even though the notice of a trial setting for December 9, 1970, had previously been sent out by the clerk, the trial judge observed that the case "would probably be tried the first week in January."

Campbell had his own appointed counsel who filed on December 3, 1970, a motion for a severance and a motion to suppress. These motions came on for hearing on December 8, 1970, one day before trial. Although, as indicated, the record on this matter is not too clear, it would appear that about a day or two prior to December 8, 1970, counsel for Johnson in conversation with the United States Attorney was apprised that the consolidated cases were actually coming on for trial on December 9, 1970. On December 8, 1970, the trial court heard argument on Campbell's various motions and denied the same. At the December 8 hearing, counsel for Johnson apparently made an oral motion for a continuance. The motion itself is not a part of the record before us. In any event, the motion for a continuance was denied, the court noting that several out-of-state witnesses for the Government, as well as for Campbell, were already en route to the trial.

Apparently the primary grounds urged for a continuance were that counsel desired time to subpoena the "short, chunky, blond headed" man later referred to by Johnson in his testimony and to also subpoena Johnson's girl friend in Charlotte, North Carolina, who would allegedly corroborate a portion of Johnson's testimony.

As concerns the "short, chunky, blond headed man," it would appear that counsel would have had great difficulty in locating him, as testimony upon trial indicated that the F.B.I. was looking for him too, but without success.

As concerns Johnson's girl friend, there is some indication that she too was not immediately available for service of a subpoena. And upon trial the Government stipulated as to what her testimony would be if she could have been located and served with a subpoena. To complete the picture, upon trial the defendants did call a waitress in a Cody, Wyoming, bar who had become acquainted with the defendants during their short stay in Cody and she testified that she had seen the "short, chunky, blond headed man" mentioned by Johnson in his testimony and hence the testimony thus stipulated to by the Government was in one sense cumulative.

■ Counsel agree that the granting or denying of a motion for a continuance rests within the sound discretion of the trial court and under the circumstances set forth above we find no such abuse of discretion as would require a retrial of Johnson's conviction. This is not a case where counsel had just been appointed and then forced to early trial. Presumably counsel had been readying for trial after having been earlier notified that trial was set for December 9, 1970. Additionally, the primary grounds urged for a continuance was the hope, which was somewhat on the optimistic side, that they could subpoena the "short, chunky, blond headed man" who had allegedly picked up Johnson and Campbell for a trek to the west. Certainly, there was no reasonable expectation that such person could be located and served with a subpeona. Finally, the record discloses that Johnson was ably represented and that his trial was not in any sense a sham or a farce because of a want of opportunity on the part of counsel to ready for trial. Goforth v. United States, 314 F.2d 868 (10th Cir. 1963), cert. denied, 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035 (1963). For all these reasons, we find no error on the part of the trial court in denying Johnson's motion for a continuance. See United States v. Davis, 436 F.2d 679 (10th Cir. 1971).

■ As above indicated, McGowan and Lawson, of the Charlotte Police Department, testified that they saw the two defendants in Charlotte on May 31, 1970, the day before the Chevrolet described in the indictments was stolen in Reidsville, which according to the record was 110 miles from Charlotte. Error is now predicated upon the reception of such evidence. In our view this testimony was relevant and material in that it tended to establish that the defendants were in the general vicinity of the place where the vehicle in question was stolen at about the time the theft occurred.

In the motion to suppress the testimony of McGowan and Lawson, it would appear that counsel was concerned that not only would the testimony of McGowan and Lawson establish that the defendants were in Charlotte on May 31, 1970, but would also show that the defendants had committed other criminal acts. Upon trial no evidence of other offenses by either of the defendants was brought in through this line of testimony. In this general connection, see, for example, Fitts v. United States, 284 F.2d 108 (10th Cir. 1960), where evidence of a jail break was held admissible on the ground that such was competent to show that the defendant was in the general area when the theft occurred some two days after the jail break. In this day and age the fact that Reidsville is some 110 miles from Charlotte does not render this line of testimony inadmissible. This testimony showed that from a geographical standpoint the defendants were in a position to have stolen the vehicle later found in their possession. We find no error in the reception of this testimony.

Counsel's final argument goes to the sufficiency of the evidence on the issue of "possession." In this connection the jury was instructed without objection that possession in one state of a vehicle recently stolen in another state, if not satisfactorily explained, permits the inference that the person in possession transported the vehicle in question interstate knowing it to have been stolen. Counsel does not quarrel with the instruction, as such, recognizing that this type of instruction has been approved by us on numerous occasions. See United States v. Fox, 435 F.2d 921 (10th Cir. 1970), and United States v. Matthews, 427 F.2d 889 (10th Cir. 1970).

Rather, it is counsel's position in this court that there is a lack of evidence that Johnson and Campbell, and more particularly Campbell, ever had in their, or his, "possession" the vehicle described in the indictments and that lacking evidence of possession the trial court at the conclusion of the Government's case should have directed a verdict of acquittal

and at this stage of the proceedings we should reverse. *See,* for example, Allison v. United States, 348 F.2d 152 (10th Cir. 1965), which defines possession of a vehicle as meaning actual control, dominion or authority over the same and holds that absent possession, no inference may be drawn that a defendant transported a vehicle in interstate commerce knowing it to have been a stolen vehicle.

■ This argument of insufficient evidence of possession represents a shift in defense strategy. Upon trial counsel for Campbell stipulated that the vehicle in question was stolen in North Carolina on or about June 1, 1970, and that the same vehicle was later found in Campbell's possession in Cody, Wyoming. Counsel for Johnson entered into the same stipulation. On this state of the record counsel cannot now successfully claim error on the ground that there is insufficient evidence of possession when upon trial it was stipulated that the vehicle named in the indictment was found in joint possession of Campbell and Johnson in Cody, Wyoming.

■ Stipulations as to facts freely and voluntarily entered into during trial are the equivalent of proof and on appeal neither party will be heard to suggest that the facts were other than as stipulated. Pryor v. Briggs Mfg. Co., 312 Mich. 476, 20 N.W.2d 279 (1945). For general background information concerning the conclusiveness of stipulations, *see* 50 Am.Jur. 610. *See also* State v. Robbins, 176 Ohio St. 362, 199 N.E.2d 742 (1964), where the Supreme Court of Ohio approved the following:

> "Agreements, waivers and stipulations made by persons accused of crimes, or by their counsel in their presence, during the course of a trial for crime, are, after the termination of the trial, as binding and enforceable upon such persons as like agreements, waivers and stipulations are upon parties to civil actions * * *."

Judgments affirmed.