Lewis Murray BOLLER, Jr., et al., Appellant (Defendant),

v.

KEY BANK OF WYOMING, Appellee (Plaintiff).

No. 90–240.

Supreme Court of Wyoming.

April 3, 1992.

Philip Nicholas of Nicholas Law Office, Laramie, for appellant.

Richard Gist, of Richard D. Gist, P.C., Lander, for appellee.

Before THOMAS, MACY and GOLDEN, JJ., and ROONEY and BROWN, Ret. JJ.

ROONEY, Justice, Retired.

Appellant contends that the Indian Tribal Court, rather than the district court, had jurisdiction to foreclose a mortgage given by him, an enrolled Indian, on land within the exterior boundaries of the Wind River Indian Reservation which had been fee patented to him. He appeals from a summary judgment in which the district court held otherwise.

We affirm.

The principal issue in this case is worded by the appellant:

"Whether the District Court of Fremont County, Ninth Judicial District, has jurisdiction to foreclose the mortgage given by an enrolled Indian of Indian land located within the Wind River Indian Reservation."

And by appellee:

"Does the District Court, Fremont County, Wyoming, Ninth Judicial District, have the necessary and requisite jurisdiction to enter a money judgment

against an Indian debtor and to foreclose a mortgage on, and order sold, fee patented land given as security for the repayment of the promissory note where the promissory note and mortgage were executed and performed off of the Wind River Indian Reservation but the fee patented land owned by the Indian debtor is located within the exterior boundaries of said Reservation?"

Appellee also presents the following issue for the purpose of limiting consideration of the "other issues":

"Whether, under the facts of this case, appellant's stipulation to judgment, as made to the trial court at the scheduling conference held May 8th, 1990, was dispositive of all issues except as to the issue of attorneys' fees and particularly that portion of the attorneys' fees which were incurred in pursuing the question of jurisdiction in this matter?"

The "other issues" are (without bracketed material as worded by appellant, and with such material as worded by appellee):

"Whether the record in this case permits the appellee to recover any interest on the debt in excess of the [minimum rate of] 12.25 percent per annum specified in the promissory note?

"Whether the record in this case permits the appellee to recover attorney's fees on the promissory note?

"Whether, under [the facts in this case and] the terms of the mortgage, appellee's acceleration of the mortgage debt, and foreclosure, are fatally premature because appellee failed, [by the record] to perform [certain] conditions precedent contained in the mortgage terms?

"Whether the record in this case permits the appellee to recover on summary judgment any attorney's fees on the foreclosure matter in excess of $1,000.00 [and] whether the [appellee] is entitled to recover any attorneys' fees which it incurred for litigation of the jurisdictional issue?

"Whether the mortgage secures the payment of any of appellee's attorney's fees?"

## JURISDICTION

Appellant is an enrolled member of the Shoshone Indian Tribe. Appellee bank, located in Lander, Wyoming, and not on the Indian Reservation, loaned appellant $112,-500. The loan was secured by a mortgage on appellant's home and ranch, which is located within the exterior boundaries of the Reservation but is no longer trust land. In 1978, the land was converted to fee patented land in the name of appellant under the Indian General Allotment Act of 1887 as amended (25 U.S.C. §§ 331–358). The Act provided, among other things, for the issuance of a fee patent for 160 acres of grazing land or 80 acres of agricultural land on a Reservation to an enrolled Indian upon application by him. Upon issuance of a fee patent, the trust status and all restrictions as to sale, encumbrance or taxation were removed from the land.

With reference to this Act, the United States Supreme Court has said: "The purpose of the allotment system was to protect the Indians' interest and 'to prepare the Indians to take their place as independent, qualified members of the modern body politic.'" *Squire v. Capoeman*, 351 U.S. 1, 9, 76 S.Ct. 611, 616, 100 L.Ed. 883 (1956) (quoting *Board of Commissioners v. Seber*, 318 U.S. 705, 715, 63 S.Ct. 920, 926, 87 L.Ed. 1094 (1943). "The purpose of the General Allotment Act of 1887, * * *, was to lay a foundation for integrating Indians into the mainstream of American society." *Quinault Allottee Ass'n v. United States*, 485 F.2d 1391, 1396, 202 Ct.Cl. 625 (1973) *cert. denied*, 416 U.S. 961, 94 S.Ct. 1980, 40 L.Ed.2d 312 (1974).

Appellant defaulted on the note and appellees accelerated the payment of the debt and brought this action to foreclose the mortgage and the accompanying security agreement. Appellant does not deny the debt, the obligation to repay it, or the mortgage. He contends that the exclusive jurisdiction to foreclose the mortgage was in the Indian Tribal Court.

The district court obtained personal jurisdiction over appellant through service of a copy of the complaint and summons on him

and on his wife by the deputy sheriff of Fremont County at a place in Fremont County and not within the Reservation boundaries. Appellant and his non-Indian wife are separated. She signed the mortgage only to release homestead rights. She did not sign the note.

Appellant argues that, contrary to the specific language of the General Allotment Act, the United States Supreme Court has rejected the establishment of state court jurisdiction in matters involving fee patented land on Indian Reservations inasmuch as such would cause "checkerboard" jurisdiction, citing *Moe v. The Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) and *Brendale v. Confederate Tribes and Bands of Yakima Indian Nation*, 492 U.S. 408, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989) in support of the argument.

In response, appellee properly notes that the *Moe* case dealt with trust property and not fee patented property, and that its holding "has been greatly undercut, if not abolished," by subsequent cases, including the *Brendale* case.

The latter case is a very recent case which involved whether State zoning regulations or tribal zoning regulations applied to fee patented lands on the Reservation. The Reservation had long been treated as divided into a "closed" area (predominantly forest land in the western portion) and an "open" area (predominantly range and agricultural land in the eastern portion). The Court differentiated between the two areas as follows:

"The closed area consists of the western two-thirds of the reservation and is predominantly forest land. Of the approximately 807,000 acres of land in the closed area, 740,000 acres are located in Yakima County. Twenty-five thousand acres of the seven hundred and forty thousand acres are fee land. The closed area is so named because it has been closed to the general public at least since 1972 when the Bureau of Indian Affairs restricted the use of federally maintained roads in the area to members of the Yakima Na-

tion and to its permittees, who must be record landowners or associated with the Tribe. Access to the open area, as its name suggests, is not likewise restricted to the general public. The open area is primarily rangeland, agricultural land, and land used for residential and commercial development. Almost half of the land in the open area is fee land."

*Brendale*, 492 U.S. at 415–16, 109 S.Ct. at 3000 (footnote omitted).

Appellant's land and the surrounding area is similar to the area described in the *Brendale* case as the "open area." It and the surrounding area are used primarily for livestock grazing and rural homesites. Access to appellant's land from U.S. Highway 287 (approximately one mile) is entirely over fee patented land, part of which is a housing tract subdivision. Appellant's sale of 40 acres of his fee patented land was to a non-Indian.

Four members of the *Brendale* court held that both the "closed" area and the "open" area were subject to state zoning. Two of the other members held that the "open" area was subject to state zoning and that the "closed" area was subject to tribal regulations inasmuch as there was insufficient fee patented land in the "closed" portion to deprive the tribe of zoning authority over that portion. The three remaining justices would have given zoning authority over both portions to the tribe.

Four members of the Court set forth what was to be considered in determining whether the tribe or the state had jurisdiction over the use of fee patented land:

"[A]s we have indicated above, that interest does not entitle the tribe to complain or obtain relief against every use of fee land that has some adverse effect on the tribe. The impact must be demonstrably serious and must imperil the political integrity, the economic security, or the health and welfare of the tribe. This standard will sufficiently protect Indian tribes while at the same time avoiding undue interference with state sovereignty and providing the certainty needed by property owners."

*Id.* at 431, 109 S.Ct. at 3008. Nothing was here ·presented to reflect such impact.

Two of the six justices held that there was insufficient fee patented land in the "closed" portion to deprive the tribe of zoning authority over that portion. Tribal regulations were held to apply only when the state regulations would change the essential character of land being used exclusively for the benefit of the tribe. There is no indication here of a contemplated change in the essential character of appellant's land or of any land in the area. It is not now being used for any tribal benefit, let alone for use exclusively for such benefit.

Additionally, these two cases cited by appellant concern *the use* of the fee patented land. There is no indication here of a change in use. A change in use of land is far more important to neighbors or to the governing entity than is a change in ownership. This difference probably explains that, in the two cases cited by appellant, the challenge was brought by the tribe itself, whereas the tribe has not here indicated any concern over the change in ownership which will result from the foreclosure. Of course, the tribe would probably refrain from asserting jurisdiction in this case in any event for fear of creating an obstacle to the granting of mortgage loans to tribal members by banks. If it made an appearance, it would likely be on the side of appellee.

There may be instances in which a change of ownership would have sufficient impact to entitle a tribe to relief, but such impact is not indicated here.

■ Generally, state laws are not applicable to tribal matters on a Reservation *except* where Congress has expressly provided that State laws shall apply. *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 170–71, 93 S.Ct. 1257, 1261–62, 36 L.Ed.2d 129 (1973). Appellant acquired the land under the General Allotment Act. The Act expressly removed the restrictions which would prevent the state law from being applicable in this case. With reference to the General Allotment Act, the United States Supreme Court said

in *Larkin v. Paugh,* 276 U.S. 431, 439, 48 S.Ct. 366, 368, 72 L.Ed. 640 (1928):

"With the issue of the patent, the title not only passed from the United States but the prior trust and the incidental restriction against alienation were terminated. This put an end to the authority theretofore possessed by the Secretary of the Interior by reason of the trust and restriction—so that thereafter all questions pertaining to the title were subject to examination and determination by the courts, appropriately those in Nebraska, the land being there. *Brown v. Hitchcock,* 173 U.S. 473, [19 S.Ct. 485, 43 L.Ed. 772 (1899) ]; *Lane v. Mickadiet,* 241 U.S. 201, 207, et seq., [36 S.Ct. 599, 600, 60 L.Ed. 956 (1916) ]."

■ Appellee properly refers us to the following cases holding that state courts have jurisdiction over ownership rights in fee patented lands on an Indian Reservation: *Dickson v. Luck Land Company,* 242 U.S. 371, 37 S.Ct. 167, 61 L.Ed. 371 (1917); *United States v. Waller,* 243 U.S. 452, 37 S.Ct. 430, 61 L.Ed. 843 (1917); *Bonds v. Sherburne Mercantile Co.,* 169 F.2d 433 (9th Cir.1948); *United States v. Vulles,* 282 F.Supp. 829 (D.Mont.1968); *United States v. Wilson,* 523 F.Supp. 874 (D.C.N.D. Iowa 1981); *Nichols v. Rysavy,* 610· F.Supp. 1245 (D.S.D.1985); *Woodtick v. Crosby,* 169 Mont. 38, 544 P.2d 812 (1976).

Prior to the foreclosure, appellant acted in recognition of the jurisdiction of the state over his land. The Fremont County Treasurer has continuously taxed the property since the issuance of the fee patent. Appellant has paid the taxes except for the years 1987 and 1988. When these taxes became delinquent, the property was sold at a tax sale (appellee bank later paid the taxes). As noted *supra,* the property is about one mile from U.S. Highway 287. To obtain access from the highway, appellant filed a petition with the Fremont County Commissioners pursuant to Wyo.Stat. § 24–9–101 *et seq.* to establish a private road across other fee patented land, part of which is the housing tract subdivision. Subsequently, the access was provided

through an easement agreement. The sale by appellant of 40 acres of his 160 acre fee patented land to a non-Indian occurred prior to the bank mortgage. The mortgage is on the remaining 120 acres.

All aspects relative to the negotiation and execution of the note and mortgage took place at appellee bank in Lander and not on the Reservation, except that appellant's wife executed the mortgage in the State of Arizona.

Even applying the conditions for jurisdiction which relate to "use" of land (logically more strict than those relating to title), nothing with reference to the mortgage transaction or of its foreclosure causes an "impact" that is "demonstrably serious" or which "must imperil the political integrity, the economic security, or the health and welfare of the tribe." *Brendale*, 492 U.S. at 431, 109 S.Ct. at 3008.

Appellant refers to the holding in *State ex rel. Peterson v. District Court of the Ninth Judicial District*, 617 P.2d 1056 (Wyo.1980) in support of his position. Although there may not be a necessity to do so, that case is distinguishable from this one on both law and facts. In that case, plaintiff brought an action against defendant for damages resulting from an accident on a highway within the boundaries of the Reservation. The automobile in which plaintiff was riding ran into a horse which defendant had failed to fence off the highway. The court held that Congress had not granted jurisdiction to the state and that such grant was necessary for state jurisdiction. This case concerns fee patented land for which Congress *has* granted jurisdiction to the state through the General Allotment Act. Another legal difference is that the *Peterson* action was in tort, whereas this one is in contract relating to title in land. Factual differences exist in that: (1) both parties in the *Peterson* case were enrolled Indians, whereas appellee is not, and (2) the entire incident in *Peterson* took place within the interior boundaries of the Reservation, whereas all of the transactions in this case took place off the Reservation.

The district court properly exercised jurisdiction under the facts and circumstances of this case.

## APPELLANT'S REPRESENTATION RE: JUDGMENT

Appellant filed a motion to dismiss in response to the complaint in this matter alleging lack of jurisdiction. The court denied the motion and appellant filed an answer, again objecting to jurisdiction but not pleading as defenses the "other issues" here presented. Appellee then filed a motion for summary judgment. It was supported by affidavits and exhibits filed with it and by those already of record. On May 8, 1990, the court issued a scheduling order which resulted from a telephone scheduling conference held with counsel on that date. It recited that during the conference, appellant's counsel "advised the Court that the Defendants were going to stipulate to judgment *except as to the issue of attorneys' fees* and particularly that portion of attorneys' fees which were incurred in pursuing the question of jurisdiction in this matter." (Emphasis added.) The scheduling order stated that "any response which the Defendants have to Plaintiffs' materials *relating to attorneys' fees* included in the Plaintiffs' Motion for Summary Judgment shall be filed by the Defendants no later than May 31, 1990." (Emphasis added.) It set a hearing with reference to "the issues of attorneys' fees" for July 13, 1990. On July 12, 1990, counsel for appellant, by telephone, requested a change in the date of the hearing "to allow him time to confer with his client and to prepare an affidavit in opposition to the affidavits of plaintiff *with regard to attorney's fees*." (Emphasis added.)

On August 6, 1990, an affidavit was filed by appellant. In it, he stated that "in any event," he should be required to pay only such attorney fees as are "both reasonable and necessary," and that, if the foreclosure action had been instituted in Tribal Court, the cost would have been "no more than $1,000." *But* he also presented argument on some of the "other issues" presented in this appeal, viz. jurisdiction, interest and

premature foreclosure. (For the most part, the affidavit was argumentative and conclusory.)

Accordingly, until August 6, 1990, and in reliance on appellant's representations of May 8, 1990 and subsequent thereto, the court and appellee understood the only issue to be resolved was with reference to allowance and amount of attorney's fees.

The court's Order Granting Motion for Summary Judgment and Awarding Attorney's Fees filed August 30, 1990, and its Order Granting Motion for Summary Judgment and Awarding Attorney's Fees Nunc Pro Tunc filed September 19, 1990 recite in part:

"On August 10, 1990, approximately 20 minutes before the scheduled hearing the Court was handed a document entitled 'Defendants' Brief Opposing Summary Judgment.' This material was supposed to have been filed no later than August 6, 1990, and was therefore not timely filed.

" * * * During the course of the hearing, the Court was handed a Motion to Amend Answer which had been filed by the defendant after the commencement of the hearing."

The court denied the Motion to Amend Answer.

The "brief" argued the "other issues" presented in this appeal, and the proposed Amended Answer presented these "other issues" in defense. Neither the affidavit nor the "brief" nor the Motion to Amend Answer contained a certificate of service or any other indication of service of them on appellee as is required by W.R.C.P. 5(c).

■ It was within the court's discretion to accept the representation limiting the issues to attorney's fees made by appellant to the court and to opposing counsel at the scheduling conference. The representation was in the nature of a stipulation or of an admission contained in a pleading. Within the discretion of the court, a party may be bound by such when voluntarily made. *Bard Ranch, Inc. v. Weber*, 538 P.2d 24 (Wyo.1975); *U.S. v. Campbell*, 453 F.2d 447 (10th Cir.1972).

Also, except for the issue concerning attorney's fees (part of that referred to as "costs" in the answer), the "other issues" were not placed before the court through the pleadings. Appellee attempted to do so through his Motion to Amend Answer. The time in which to amend the answer as a matter of right had expired. W.R.C.P. 15(a) provides in pertinent part:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

Appellant's Motion to Amend Answer recognizes the necessity for leave of court to file an amended answer. In most instances, the leave is "freely given."

"Unless the proposed amendment to the pleading will unduly prejudice the opposing party, has not been offered in good faith, or the party seeking to amend has had repeated opportunities to cure the defect, leave to amend should be liberally granted."

*Johnson v. Aetna Casualty and Surety Co. of Hartford, Conn.*, 608 P.2d 1299, 1303 (Wyo.1980) *app. dis. and cert. denied* 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981).

The repeated representations that the only issue (other than jurisdiction) related to attorney's fees made by appellant between May 8, 1990 (the time of the initial representation) and August 6, 1990 are set out *supra*. He had "repeated opportunities to cure" any defect.

"[T]he grant or denial of leave to amend is within the discretion of the trial court. The matter is subject to reversal on appeal only for an abuse of that discretion."

*Breazeale v. Radich*, 500 P.2d 74, 74 (Wyo. 1973).

"A court does not abuse its discretion unless it acts in a manner which exceed the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances."

*Martinez v. State*, 611 P.2d 831, 838 (Wyo. 1980).

The court could "reasonably conclude as it did" after appellant represented on multiple occasions that the only issue before the court (after the ruling on jurisdiction) had to do with attorney's fees, after appellant's "out of time" filings, and after the presentation by appellant of the request to amend at "the 11th hour." The ruling did not exceed the "bounds of reason under the circumstances."

Under the facts and circumstances of this case, the trial court properly refused to allow appellant to add issues through an amended complaint contrary to appellant's previous representations concerning the issues.

## "OTHER ISSUES"

Our holding in the previous section (Appellant's Representation Re: Judgment), makes unnecessary consideration of the "other issues" here presented, except those having to do with attorney's fees. The issues relative to attorney's fees are three in number: (I) Whether or not the record permits recovery of attorney's fees in an action for collection of the promissory note; (II) Whether or not attorney fees can be recovered in excess of $1,000 or for those incurred in litigation of the jurisdictional issue; and (III) Whether or not the mortgage secures the payment of appellees' attorney's fees.

I. WHETHER OR NOT THE RECORD PERMITS RECOVERY OF ATTORNEY'S FEES IN AN ACTION FOR COLLECTION OF THE PROMISSORY NOTE.

The complaint alleged the execution and delivery by appellant of the promissory note, which was attached as Exhibit "A." Subsequently and on July 11, 1990, appellee filed a Motion to Substitute for Exhibit "A." A copy of the motion was served on appellant on that date. The original exhibit consisted only of the front of the promissory note. The note consisted of a single sheet of paper with the terms on both the front and back of the paper. Appellee recited in the motion that the back of the note was not included in the original exhibit due to "error and inadvertence," and he moved to substitute the complete note for the front page of it. The court issued an order allowing the substitution.

Appellant founds his contention that the record does not permit recovery of attorney's fees on the fact that the provision for attorney's fees is on the back of the note, and that the back of it was not authenticated when filed, as was the front of the note when it was attached to the complaint.

The provision on the back of the note reads: "If you hire a lawyer to collect this note, I must pay his or her fee, plus court costs (except where prohibited by law)." The front of the note provides, immediately above appellant's signature, in capital letters and bold face print: "I agree to the terms set out on the front *and back* of this agreement." (Emphasis added.)

Although W.R.C.P. 56(e) requires that sworn or certified copies of papers be used to support a motion for summary judgment, we have held that the purpose of such filing is to give notice to the opposing party in order to afford him an opportunity to challenge the submitted evidence, and that a party waives his objection on appeal to the consideration by the trial court of materials presented on a motion for summary judgment when that party allows such consideration without objection. *Matter of Estate of Obra*, 749 P.2d 272, 276 (Wyo.1988). Under the circumstances of this case, appellant could not challenge the existence of the back page of the note or its contents. He did not make a timely objection to the substitution. The proposition concerning waiver is stated in 10A

WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2722 (1983):

"As is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived."

The motion to substitute the full copy of the note in place of the front page thereof was made July 11, 1990. Appellant was so notified on that date. On July 12, 1990, appellant requested a change in the July 13, 1990 date for hearing with reference to attorney fees. In the order changing the date to August 10, 1990, the court ordered that "[a]ny affidavits or materials in opposition to those materials filed by plaintiff with regard to attorney's fees shall be filed by the defendant no later than August 6, 1990." On August 6, 1990, appellant filed his Affidavit in Response to Plaintiff's Motion for Summary Judgment, but it was not served on appellee. In it, he stated, "If the plaintiff's qualified affiant swears that the substituted note is true, then without further discovery, I must accept that." There is no suggestion that appellant could make a legitimate challenge to the back of the note had it been included in the original exhibit.

For the first time, appellant objected to the substitution on August 10, 1990. This was about a month after the Motion to Substitute was filed, and it was done in a "brief," normally an instrument for argument on the issues and not a pleading or instrument formulating the issues. It was filed four days after the time set by the court for filing "affidavits or materials in opposition to those materials filed by plaintiff with regard to attorney's fees." Appellant's objection to the consideration of the entire note was not timely.

The trial court properly allowed the substitution. When he signed the note, appellant knew, or should have known, that the note provided for payment of appellee's attorney's fees if it became necessary to incur such in order to make collection after default.

## II. WHETHER OR NOT ATTORNEY FEES CAN BE RECOVERED IN EXCESS OF $1,000 OR FOR THOSE INCURRED IN LITIGATION OF THE JURISDICTIONAL ISSUE.

■ Appellant's contention that attorney's fees in excess of $1,000 should not be recoverable is premised on the assumption that appellee had a choice of forums: the district court or the Tribal Court. He further contends that the jurisdictional issue would not have been contested in the Tribal Court, and that "a reasonable fee for foreclosure in the Tribal Court would not have exceeded $1,000."

The contention that there is concurrent jurisdiction is contrary to appellant's position on the jurisdiction issue presented in this appeal. Our holding on that issue is that the district court had exclusive jurisdiction to foreclose this mortgage by virtue of the General Allotment Act.

There is a provision in THE LAW AND ORDER CODE OF THE SHOSHONE AND ARAPAHOE TRIBES OF THE WIND RIVER INDIAN RESERVATION, WYOMING for foreclosure of mortgages, but it limits its jurisdiction by excluding actions in which jurisdiction is placed elsewhere under federal laws, such as was done by the General Allotment Act. Chapter 2, Section 1–2–4 of THE LAW AND ORDER CODE provides:

"*Subject to any contrary provisions, exceptions, or limitations contained in either federal laws and regulations,* the Courts of the Shoshone and Arapahoe Tribal Court shall have jurisdiction over any real or personal property located on the reservation to determine the ownership thereof or rights therein or to determine the application of such property to the satisfaction of a claim for which the owner of the property may be liable." (Emphasis added.)

There may be instances in which foreclosure can be made under this Code but not in this case in which the property is fee patented land with the mortgage being held by a non-Indian, in which the land is "open," i.e., it and surrounding land are being used primarily for grazing and rural homesites in which there is other fee pat-

ented land in the area, and with the entire mortgage transaction occurring off the Reservation.

The court had before it: (1) an affidavit of appellee's attorney detailing the work performed in this matter and the basis for the fee, and (2) an affidavit of a practicing attorney in Lander setting forth details of his review of the work performed by appellee's attorney and the propriety of it and of the charges for it. Appellant did not file an affidavit in opposition to it. He argues that the charges for work required by the jurisdictional issue should not be included in the allowed fees since it was not a usual issue in a foreclosure proceeding. However, it was appellant's choice to test the jurisdiction under which the foreclosure action was brought, making necessary the work in connection therewith.

The award of attorney's fees is within the discretion of the court. The court did not abuse its discretion in this case.

### III. WHETHER OR NOT THE MORTGAGE SECURES THE PAYMENT OF APPELLEES' ATTORNEY'S FEES.

■ The Order Granting Motion for Summary Judgment and Awarding Attorney's Fees Nunc Pro Tunc directed in part that the mortgaged property be sold and that "all proceeds of said sale shall be applied a [sic] payment or partial payment as the case may be, of the judgment herein awarded, plus expenses incurred in said sale, *plus attorney's fees* and costs, interest, taxes and insurance." (Emphasis added.)

Appellant argues that the mortgage "does not provide that any attorney's fees shall be secured by the mortgage," and, therefore, that the proceeds of the sale cannot be used to pay attorney's fees. Since the note does provide for payment of attorney's fees, and since the mortgage provides that it "secures to Lender: * * * (c) the performance of Borrower's covenants and agreements under this Security Instrument *and the Note*" (emphasis added), the mortgage does secure the payment of attorney's fees.

Affirmed.

THOMAS, Justice, concurring.

I concur in the result in this case. I agree with the holding of the majority in this case to the extent that it recognizes jurisdiction in the District Court of the Ninth Judicial District of the State of Wyoming in and for Fremont County to foreclose the mortgage on fee lands within the exterior boundaries of Wind River Indian Reservation. I also agree that the award of attorney fees was appropriate.

I must take exception to the dicta appearing on page 10 of the slip opinion of the majority indicating a holding that the state district court had exclusive jurisdiction to foreclose this mortgage by virtue of the General Allotment Act. I do not think the General Allotment Act had that effect, nor can I agree that the authorities pertaining to the General Allotment Act that are cited in the majority opinion really justify that conclusion.

My primary concern, however, is that the question posed to this court was "Whether the District Court of Fremont County, Ninth Judicial District, has jurisdiction to foreclose the mortgage given by an enrolled Indian of Indian land located within the Wind River Indian Reservation." This question does not require us to reach the issue of jurisdiction of any other court once we have decided that the state district court has jurisdiction. I would limit our holding in that regard because I am not persuaded that the tribal court would not have jurisdiction. In fact, the somewhat sparse authority in regard to that question might lead to the conclusion that the tribal court would have concurrent jurisdiction, at the very least. *See Kennerly v. District Court of Ninth Judicial Dist. of Montana*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971); *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *Northwest South Dakota Production Credit Ass'n v. Smith*, 784 F.2d 323 (8th Cir.1986); and *Security State Bank v. Pierre*, 162 Mont. 298, 511 P.2d 325 (1973).

I recognize a number of pragmatic reasons for seeking foreclosure in the state

district court. Not the least of those reasons is that the decree of a tribal court will not necessarily be recognized by the county clerk for purposes of title records. For that reason, it must be a better choice to use the state court, but I am not persuaded that, if parties chose to seek foreclosure in the tribal court, the tribal court would not have jurisdiction to proceed. In any event, that question need not be answered in this case.