*743 BURKE, Chief Justice,
dissenting.
[T74] I respectfully dissent. I would conclude that a Wyoming district court lacks subject matter jurisdiction over a tort action brought by a non-Indian plaintiff against enrolled tribal member defendants' to recover damages for injuries sustained in a motor vehicle collision that occurred' on a state highway within the boundaries of the Wind River Reservation. Consequently, I would reverse the decision of the district court.
[T75]) My prmcipalavdepamure from the majority's analysis arises from its conclusion that the status of the tribal member as a defendant is irrelevant. According to the majority, "the alignment of the parties is not material to our analysis and does not change' the out¢ome." I disagree. "'[Ilt is the membership status of the unconsenting party ... that counts as the primary jurisdictional fact."" Smith v. Salish Kootenai College, 434 F.3d 1127, 1131 (9th Cir.Mont.2006) (quoting Nevada v. Hicks, 533 U.S. 353, 382, 121 S.Ct. 2304, 2322, 150 L.Ed.2d 398 (2001) (Souter, J., concurring)). The tribal membership of the defendants in this case is critical to the jurisdictional analysis.
[¶76) The foundation on which this decision should rest is Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). In that case, a non-Indian plaintiff sued a tribal member in state court to collect a debt incurred on the reservation. Id., 358 U.S. at 217-18, 79 S.Ct. at 269. The Supreme Court set forth this test: "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the. right of reservation Indians to make their own laws and be ruled by them." Id., 358 U.S. at 220, 79 S.Ct. at 271. It concluded: "There can be no doubt that to allow the exercise of state jurisdiction here «would undermine the authority of the tribal courts over «Reservation affairs and hence would infringe on the right of the Indians to govern themselves." Id., 358 U.S. at 223, 79 S.Ct. at 272.
[¶77] 'We applied Williams in State ex rel. Peterson v. District Court of the Ninth Judicial Dist., 617 P.2d 1056 (Wyo.1980). Factually, Peterson is very similar to 'the present case. It involved a suit commenced in state court against a tribal member to recover damages arising from an accident that occurred on a state highway within the boundaries .of the reservation, The procedural posture of Peterson was unusual and underscores the importance of the issue presented in this case. In Peterson, the defendant tribal member filed a petition for a writ of prohibition requesting that this Court invoke its original jurisdiction under Article 5, Section 3 of the Wyoming Constitution. We granted the petition "to prevent the district court from exercising subject-matter jurisdiction forbidden to it by federal law and to prevent the petitioner from having to defend this action in the state court system, as well as in the tribal court system." Id., 617 P.2d at 1057.
[¶78] Recognizing that the issue of subject matter jurisdiction in the case. was a question of federal law, we proceeded to review the analysis set forth in Williams and . "later decisions which give flesh to the Williams skeleton." Id., 617 P.2d at 1063. We interpreted Fisher v. District Court, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976), to mean that "where a tribal court is established to handle a dispute involving reservation Indians, concurrent state jurisdiction is an interference with tribal self-government." Peterson, 617 P.2d at 1068. Ultimately, we were "persuaded by [our] review of United States Supreme Court cases" that the tribal court had jurisdiction over the case, and the state district court did not. Id., 617 P.2d at 1069. The same conclusion should be reached in this case.
[¶79] I am unconvinced by the majority's effort to distinguish this case from Peterson based on the identity of the plaintiff. All of the parties in Peterson agreed that the plaintiff, a non-Indian insurance company, was the real party in interest, and we acknowledged that the case was "formally between a non-Indian and an Indian." Id, 617 P.2d at 1058. The majority did find it "significant" that the case "would, of necessity, involve evaluation of the conduct (for purposes of ascertaining negligence) of two Reservation Indians on the Reservation." However, cloge review of the cases we cited in Peterson reveals that *744 the identity of the plaintiff was not the deciding factor.
[¶ 80] - In Williams, 358 U.S. 217, 79 S.Ct. 269, the plaintiff was "not an Indian." The defendant was a tribal member. In Fisher, 424 U.S. at 383, 96 S.Ct. at 944, "all parties [were] members of the Tribe." As for Kennerly v. District Court, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971), we observed in Peterson that "[wle are not told whether the [plaintiff] grocer was also Indian." Peterson, 617 P.2d at 1064. However, we said it was "worthwhile to consider [Kenmnerly ] in detail since it illustrates how stringently the United States Supreme Court protects reservation Indians from the exercise of state court jurisdiction when the cause of action arises on a reservation and involves Indian defendants." Id. (emphasis added). Despite the differing or unknown identities of the plaintiffs in these three cases, the results were the same: the state courts lacked jurisdiction. The result in Peterson would have been the same regardless of the identity of the plaintiff. - "It is immaterial that respondent [plaintiff] is not an Indian." Williams, 358 U.S. at 223, 79 S.Ct. at 272. It does matter, however, if the defendant is a tribal member. In all of the cases just referenced, the defendant was a tribal member, and in all of those cases it was determined that the state court lacked subject matter jurisdiction.
[¶81] The United States Supreme Court, in Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, recognized that the tribal status of the defendant is key to the jurisdictional analysis. Justice Souter, joined by Justices Kennedy and Thomas, wrote:
[I1t is undeniable that a tribe's remaining inherent civil jurisdiction to adjudicate civil claims arising out of acts committed on a reservation depends in the first instance on the character of the individual over whom jurisdiction is claimed.... It is the membership status of the unconsenting party ... that counts as the primary jurisdictional fact.
Id., 533 U.S. at 381-82, 121 S.Ct. at 2322 (Souter, J., concurring). Justice O'Connor, joined by Justices Stevens and Breyer, placed the holding in perspective:
Today, the Court finally resolves that Montana v. United States, 450 U.S. 544, [101 S.Ct. 1245,] 67 L.Ed.2d 493 (1981), governs a tribe's civil jurisdiction over nonmembers regardless of land ownership. Ante, at 4-6. This is done with little fanfare, but the holding is significant because we have equivocated on this question in the past.... Given the facts of Montana, it was not clear whether the status of the persons being regulated, or the status of the land where the hunting and fishing occurred, led the Court to develop Mon-tano's jurisdictional rule and its exceptions. \
Id., 533 U.S. at 387, 121 S.Ct. at 2324-25 (O'Connor, J., concurring in part and coneur-ring in the judgment). The unconsenting parties in our case are the defendants, who are both tribal members.
[¶82] It is true that Hicks concerned tribal jurisdiction and the Montano test. But as the majority notes, Willkioms and Montana analyses are "merely different formulations of the same underlying concept." Cordova v. Holwegner, 93 Wash.App. 955, 971 P.2d 531, 537 (1999). Whether determining state court jurisdiction over Indian defendants or tribal court jurisdiction over non-Indians for actions arising within the boundaries of a reservation, the tribal status of the defendant is the "primary jurisdictional fact."
[¶83] Our decision in Boller v. Key Bank, 829 P.2d 260 (Wyo.1992), does not undermine that conclusion. In Boller, we upheld state court subject matter jurisdiction over a foreclosure action brought by a non-Indian bank against a tribal member. Id., 829 P.2d at 264. According to the majority, "we rejected the argument that Peterson was controlling and distinguished it on grounds that '(1) both parties in the Peterson case were enrolled Indians, * * * and (2) the entire incident in Peterson took place within the interi- or boundaries of the Reservation' Id. at 264." That analysis is only partially accurate. The Boller court distinguished Peterson on both the "law and facts." Boller, 829 P.2d at 264. While we did set forth the factual distinction provided above, the more significant distinction was a legal one. "The [Peterson ] court held that Congress had not *745 granted jurisdiction to the state and that such grant was necessary for state jurisdiction. This case concerns fee patented land for which Congress has granted jurisdiction to the state through the General Allotment Act." Boller, 829 P.2d at 264 (emphasis in original). In this case, as in Peterson, Congress has not granted jurisdiction to the state courts.
[T 84] -I would follow Williams and Peterson to conclude that the state court lacks jurisdiction in the case before us. The majority relies instead on Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) and Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). I am convinced that these cases are inapplicable here. The question before us is whether the state court has 'subject matter jurisdiction over a suit against two defendants who were enrolled tribal members when the accident occurred within the boundaries of the reservation. In contrast, Montana concerned "the sources and seope of the power of an Indian tribe to regulate hunting and fishing by non-Indians on lands within its reservation owned in fee simple by non-Indians." Id., 450 U.S. at 547, 101 S.Ct. at 1249.
[¶85] The limitations of Montana are highlighted repeatedly in Strate. e Court in Strate specified that neither party to the Titigation was an Indian. Id., 520 U.S. at 442, 117 S.Ct. at 1407. It stated the narrow question before it: "This case concerns the adjudicatory authority of tribal courts over personal injury actions against defendants who are not tribal members." Id. Its holding was equally narrow: "[TJribal courts may not entertain claims against nonmembers arising out of accidents on state highways, absent a statute or treaty authorizing the tribe to govern the conduct of nonmembers." Id., 520 U.S. at 442, 117 S.Ct. at 1408. Moreover, it reiterated the significant but limited nature of its decision in Montana: "Montana v. United States ... is the pathmarking case concerning tribal civil authority over nonmembers." Strate, 520 U.S. at 445, 117 S.Ct. at 1409 (emphasis added).
[T 86] The majority also misapplies Strate to reach a conclusion about the status of the highway where the accident occurred. In Strate, as in the case before us, the accident took place on a state highway within the boundaries of the reservation. In Strate, the Supreme Court concluded that the highway was the equivalent of alienated, non-Indian land. Critical to that conclusion, however, was the fact that none of the parties were tribal members. As the court observed, "civil authority of Indian tribes and their courts with respect to non-Indian fee lands generally 'does not extend to the activities of nonmembers of the tribe." Strate, 520 U.S. at 453, 117 S.Ct. at 1413 (quoting Montana, 450 U.S. at 565, 101 S.Ct. at 1258). Accordingly, it ruled that "The right-of-way North Dakota acquired for the State's highway renders the 6.59~-mile stretch equivalent, for nonmember governance purposes, to alienated, non-Indian land." Strate, 520 U.S. at 454, 117 S.Ct. at 1413 (emphasis added; footnote omitted).
[¶87] The majority has ignored the significant limitation explicitly stated in Strate. It never -explains how it makes the leap from the Supreme Court's characterization of the state highway as alienated non-Indian land "for nonmember governance purposes" to its conclusion that the state highway is "non-Indian fee land." Instead of recognizing and applying the limitation set forth in Strate, the majority essentially concludes that the highway where the accident took place in this case is also equivalent to alienated non-Indian land for purposes of governing tribal members. The limitation placed on the highway designation in Strate is significant and must be taken into account in our jurisdictional analysis. In this case, the defendants are tribal members. The defendants are the parties being regulated. They are the non-consenting parties. Here, we are resolving jurisdictional issues relating to tribal member governance. Tribal regulation of nonmember conduct at issue in Strate is not present here. The question before us is the extent of state court jurisdiction over Indian defendants. Williams provides the correct perspective for our case. Montano and Strate do not.
[¶88] I also take issue with the majority's assertion that "Other courts have similarly concluded that the fact of a tribal mem *746 ber being a party to the action does not change the outcome dictated by Strate." In all four of the cases cited for that proposition, the courts rejected tribal court jurisdiction over actions against non-Indian defendants. One of the cases explicitly recognizes the significance of the membership status of the defendant. In Nord v. Kelly, 520 F.3d 848, 851 (8th Cir.Minn.2008), the plaintiff was a tribal member, and the defendants were non-Indian,. The court followed Strate and ruled that the tribal court lacked jurisdiction, noting that "[the dispute in Strate arose out of an accident between two non-Indians, whereas here, one party [the plaintiff] was a member. We find this to be a distinction without a difference, however, because in either case, the question is whether the tribe has jurisdiction over the nonmember . [defendant]," Nord, 520 F.3d at 854 n. 3. The Nord court found the identity of the plaintiff "insignificant." Id., 520 F.3d at 856.
[¶891 The majority relies on Tejesova v. Bone, 2007 WL 1160059, *1 (W.Dist.N.C. 2007), in which a non-Indian brought an action in federal district court against a tribal member for injuries sustained in a vehicle collision on a federal highway on the reservation. The defendant moved to dismiss, claiming that the plaintiff had failed to exhaust her remedies in Tribal Court. The district court denied the motion, ruling that the tribal court lacked jurisdiction. Id. at *5. The court's analysis is not persuasive. Its decision is internally inconsistent.
[¶90] Noting that the question of tribal court jurisdiction is a question of federal law, the Tejesova court set forth its understanding of the United States Supreme Court's precedent on the question:
The [Supreme] Court's recent cases ... demonstrate that there are two facts courts look to when considering a tribal court's civil jurisdiction over a case in which a nonmember is a party. «First, and most important, is the party status of the nonmember; that is, whether the nonmember party is a plaintiff or a defendant .... It is the membership status of the unconsenting party, not the status of real property, that counts as the primary jurisdictional facet. The Court has repeatedly demonstrated 'its concern that tribal courts not require defendants who are not tribal members to defend [themselves against ordinary claims] in an unfamiliar court,. Second, the Court has placed some store in whether or not the events giving rise to the cause of action occurred within the reservation.
Tejesova, 2007 WL 1160059, *3 (quoting Smith, 434 F.3d at 1131) (bracketed material and omissions as in Tejesovo; emphasis added). In the remainder of the opinion, however, the court ignored the primary jurisdictional fact that the unconsenting party, the defendant, was a tribal member. The court's sole reference to party status is contained in one sentence: "Here, the Plaintiff is a on-member and so the Court looks to the second factor, that is, "whether the cause of action brought by these parties bears some direct connection to tribal lands.'" Tejesova, 2007 WL 1160059, *3.
[¥91] The court focused almost exclusive ly on the location of the accident even though it recognized that the Supreme Court has placed only "some store" in that factor. Essentially, the court failed to follow its own understanding of applicable federal law.[4] Although the court recognized that the party status of the "unconsenting party" was the "primary jurisdictional fact," it failed to apply that fact in its analysis. It looked only at the status of the plaintiff.
[¶92] Shortly after Tejesova was decided, the Cherokee Supreme Court had the opportunity to apply Teesova to an accident on the same highway within the reservation. In Crow v. Parker, 6 Cher.Rep. 33, - Am. Tribal Law -- (N.C.Cherokee Sup.Ct. 2007), the plaintiff was a tribal member. The: defendant was a non-member who *747 sought dismissal claiming that the tribal court lacked subject matter jurisdiction. The Cherokee Supreme Court rejected the Tejesova analysis. The Court described the Tejesova decision as "an outlier." Crow, 6 Cher.Rep. 33, 1 36, -- Am. Tribal Law --. It concluded that, under Strate, tribal status of the defendant was the determining factor: "Thus, the contention ... that this case differs from Strate because the Plaintiff in this case is an enrolled member of the EBCI is without merit inasmuch as it is the status of the non-member as a party defendant which triggers the Strate inquiry." Id. Ultimately, the Cherokee Supreme Court held that the tribal court lacked subject matter jurisdiction because the defendant was a nonmember.
[T93] The decision in Tejesova is also directly contrary to two appellate court decisions from other jurisdictions, Both are factually indistinguishable from the case before us. Both rejected the application of Montana and Strate to these facts, and instead relied on Williams to conclude that state courts lack jurisdiction over actions by non-Indian plaintiffs against Indian defendants when the action arose within a reservation. I find these decisions far more persuasive than Tejesova.
[¶94] In Winer v. Penny Enterprises, Inc., 674 N.W.2d 9, 10 (N.D.2004), the court held that "the district court correctly ruled it lacked subject-matter jurisdiction over this action brought by a non-Indian plaintiff against Indian defendants for damages resulting from a motor vehicle accident occurring on a state highway within the exterior boundaries of the Spirit Lake Indian Reservation." The court addressed the relevance of Strate:
We are not convineed that Strate heralds a new analysis for determining whether a state court has jurisdiction over. an action brought against an Indian arising from conduct occurring within the exterior boundaries of an Indian reservation. In W. Canby, Ir., American Indian Law in a_ Nutshell, 175-76 (3rd ed.1998), the author offered the following observations about the Supreme Court's decision in Strate:
Strate involved only nonmembers on both sides, but it phrased the question for decision as whether a tribal court could "entertain a civil action against" nonmembers when the claim arose on a state right-of-way. Strate, 117 S.Ct. at 1407. It also described tribal interests very narrowly. Consequently, one court of appeals has held that a tribal court could not entertain an action by a tribal member against a nonmember when the claim arose on a state highway within the reservation. Wilson v. Marchington, 127 F.3d 805 (9th Cir.1997), cert. denied, 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998). The state accordingly had jurisdiction. If the tribal member were the defendant, however, Williams v. Lee would require the action to' be brought in tribal court. It is not yet clear whether Strate forecasts erosion of that rule for non-fee lands and state rights-of-way. >
We believe Strate does not govern this case for several reasons. Foremost, Strate analyzed a tribal court's jurisdiction, rather than a state court's jurisdiction, involving an action between non'-Indians. . When stating the highway ~right-of-way was equivalent to alienated, non-Indian land, the Court was careful to limit its deseription as. applicable only for "nonmember governance purposes." Strate, 520 U.S. at 454, 117 S.Ct. 1404." See also Strate, at 456, 117 S.Ct. 1404 (stating "we therefore align the right-of-way, for the purpose at hand, with land alienated to non-Indians") {emphasis added). Tribal-court jurisdiction is dependent upon application of the Montana test, which governs an "Indian tribe['s] regulatory authority over nonmembers." Nevado v. Hicks, 533 U.S. 353, 358, [121 S.Ct. 2304,] 150 L.Ed.2d 398 (2001). Since Strate was decided, the Supreme Court has even noted that the "ownership status of land, in other words, is only one factor to consider in determining whether [tribal] regulation of the activities of nonmembers is 'necessary to protect tribal self-government or to control internal 'relations'" Hicks, at 360, 121 S.Ct. 2304. Williams v. Lee is "the seminal United States Supreme Court decision concerning state civil-adjudieatory authority in Indian country," Conference of West *748 ern Attorneys General, American Indian Law Deskbook, 154 (@nd ed.1998), and state court jurisdiction was not an issue in Strate. The interests implicated when a non-Indian is sued are "very different from those present" when a non-Indian sues an Indian in state court over an incident occurring in Indian country. Three Affilicted Tribes I, 467 U.S. at 148, 104 S.Ct. 2267. The United States Supreme Court has "formulated a comprehensive pre-emption inquiry in the Indian law context which examines not only the congressional plan, but also 'the nature of the state, federal, and tribal interests at state, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." Three Affiliated Tribes II, 476 U.S. at 884, 106 S.Ct. 2305 (quoting White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 145, [100 S.Ct. 2578,] 65 L.Ed.2d 665 (1980)).
Moreover, all of the cases relied upon by Winer which have applied the Strate analysis have involved situations testing tribal court jurisdiction over non-Indian defendants where the conduct occurred on a right-of-way. See Burlington N. R.R. Co. v. Red Wolf, 196 F.3d 1059, 1062 (9th Cir.1999); Wilson v. Marchington, 127 F.3d 805, 807 (9th Cir.1997); Chiwewe v. Burlington N. & Santa Fe Ry. Co., 239 F.Supp.2d 1213, 1215 (D.Ct.N.M.2002); Austin's Express, Inc. v. Arneson, 996 F.Supp. 1269, 1271 (D.Ct.Mont.1998). We have not found any case wherein the Strate analysis has been used to determine whether a state court has jurisdiction over a tort action brought against an Indian arising on a right-of-way within the exteri- or boundaries of a reservation. Rather, courts have refused to apply Strate beyond the context in which it was decided. See Williams v. Board of County Comm'rs, 1998-NMCA-090, 125 N.M. 445, 963 P.2d 522, 526 (N.M.Ct.App.1998) (summarily re.jecting plaintiffs argument that Strate "dictates that a state court must consider the merits of his claims" because "Strate addressed tribal court jurisdiction" and "was independent of case law holding that Indian nations may not be sued in state courts").
If Strate signals a drastic departure from the state court jurisdictional principles enunciated in Williams v. Lee and its progeny, it is well hidden in the Strate decision. Strate is distinguishable from the situation in this case, and until the United States Supreme Court declares otherwise, we conclude Strate does- not govern our analysis here.
Winer, 674 NW.2d at 14-16 (emphasis in original). -
[¶95] In Hinkle v. Abeita, 283 P.3d 877, 878 (N.M.Ct.App.2012), a non-Indian plaintiff's claim against an enrolled member of the Pueblo involved a motor vehicle accident that cecurred on a state highway within the boundaries of the Pueblo. The issue was whether the state court had subject matter jurisdiction. The court noted that, over thir ty years ago in Hartley v. Baca, 97 N.M. 441, 640 P.2d 941 (App.1981), it "resolved the exact legal issue raised in this case on nearly identical facts." Hinkle, 283 P.3d at 878. However, subsequent United States Supreme Court decisions, particularly Strate, prompted the court to "revisit the issue to determine whether evolving federal Indian Law jurisprudence and recent precedent from our own Supreme Court now require a different result." Hinkle, 283 P.3d at 878. The court's comprehensive analysis of federal Indian Law jurisprudence is organized under the headings "The Montana Line of Cases Is Limited to Determining Tribal Court Juris diction" and "The [Montana ] Rule Applies Only When the Unconsenting Party is a Nonmember." Hinkle, 283 P.3d at 880, 882. Based on its discussion of federal precedent, it concluded that the new developments "do not alter our analysis ... and we hereby affirm the district court's decision to dismiss for lack of subject matter jurisdiction." Id., 283 P.3d at 878.
[¶96] The majority's suggestion that the decisions in Wirer and Hinkle are distinguishable because they relied on state law to the exclusion of federal precedent is difficult to accept. Both relied upon federal precedent and state court decisions that applied *749 federal precedent.[5] That is no different than what the majority is attempting to do here and is the same approach that we employed in Peterson.
[¶97] In conclusion, I would again emphasize that this case involves a claim against tribal member defendants arising from an accident that occurred within the boundaries of a reservation. In determining whether the state court has subject matter jurisdiction, we must apply federal law. Under Supreme Court precedent, the tribal status of the non-consenting party, the defendant, is the "primary jurisdictional fact." In this case, both defendants are tribal members. I find no support in applicable federal or state precedent for the majority's conclusion that tribal status of the defendant is irrelevant to a proper jurisdictional analysis. In order to reach that conclusion, the majority extends Strate far beyond the express limitations of that decision. In Strate, both parties were "nonmembers" and the highway was deemed "non-Indian fee land" only for "non-member governance purposes." I would reaffirm and follow our decision in Peterson and apply the United States Supreme Court's decision in Williams. I would hold that the district court lacks subject matter jurisdiction.

. After the court denied the motion to dismiss, the tribe moved to intervene so it could "submit additional evidence and argument showing that this case should be dismissed." Tejesova, 2008 ~WL 162137, "1 (quoting the motion to intervene). The court denied that motion, but granted the tribe's request to certify the denial of intervention for interlocutory appeal. Id. at "2. The parties resolved the case by settlement while the appeal was pending, effectively preventing the ' tribe from pursuing its appeal. Tefesova, 2008 WL 2074077, at "1.

. See also Routh v. Miller, 2007 Mont. Dist. LEXIS 510, 112 (Mont.Dist.Ct.2007) (a personal injury action brought by a non-Indian plaintiff against an enrolled member of a tribe and her non-Indian husband arising out of activities occurring on trust land). The court distinguished Montana and Strate, and applied the Williams infringement test to conclude that the state court lacked jurisdiction. Id., 114.