No. 12981

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

CEDRIC WOODTICK,
a/k/a CEDRIC PLAINFEATHER,

Plaintiff and Appellant,

-vs-

RODNEY L. CROSBY,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Towe, Neely and Ball, Billings, Montana
Thomas E. Towe argued, Billings, Montana

For Respondent:

Hibbs, Sweeney and Colberg, Billings, Montana
William T. Wagner argued, Billings, Montana

---

Submitted: September 29, 1975

Decided: JAN 9

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from the district court, Big Horn County, from a final judgment dismissing plaintiff's complaint for lack of subject matter jurisdiction.

Plaintiff, a competent Crow Indian, was issued a patent in fee simple on October 13, 1971 to land situate within the exterior boundaries of the Crow Indian Reservation. Subsequently, by warranty deed dated October 29, 1971, plaintiff conveyed this land to Rodney L. Crosby, a non-Indian.

By his complaint, filed July 23, 1974, plaintiff seeks cancellation of the deed given Crosby alleging that by this deed Crosby became the non-Indian owner of more acreage of land within the Crow Indian Reservation than permitted under the provisions of Section 2, Act of June 4, 1920 (41 Stat. 751), and, therefore, pursuant to the explicit language of that Act, the deed was void.

By motion on August 30, 1974, defendant Crosby moved to dismiss the complaint on grounds that the courts of this state are without jurisdiction over the subject matter of this controversy. By order dated December 6, 1974, the district court granted defendant's motion to dismiss.

The land which is the subject matter of this case lies entirely within the exterior boundaries of the Crow Indian Reservation. As such, Montana state courts have jurisdiction over it only to the extent granted by Congress.

Section 4(2) of Montana's Enabling Act (25 Stat. 676), under which Montana was admitted to the Union and its Constitution adopted, provides:

> "That the people * * * [of Montana] * * * do agree
> and declare that they forever disclaim all right
> and title to the unappropriated public lands lying
> within the boundaries thereof, and to all lands
> lying within said limits owned or held by any Indian
> or Indian tribes; and that until title thereto shall

have been extinguished by the United States * * * said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States * * *." (Emphasis supplied.)

Identical language is contained in Ordinance No. 1, §2, Montana Constitution of 1889. Article I, 1972 Montana Constitution provides that both the Enabling Act and Ordinance No. 1 are to "continue in full force and effect until revoked by the consent of the United States and the people of Montana."

By the Crow Indian Allotment Act of June 4, 1920 (41 Stat. 751), as amended by the Act of May 26, 1926 (44 Stat. 658), Congress undertook allotment of Crow Reservation lands among members of the Crow Tribe. Section 1 of the Act provides for allotments in severalty to be evidenced by "patents in fee to competent Indians * * * but by trust patent to minors and incompetent Indians, the force and legal effect of the trust patents to be as is prescribed by the General Allotment Act of February 8, 1887, as amended. (Twenty-fourth Statutes at Large, page 388)", now 25 United States Code, §§ 348,349.

Section 348 essentially provides that the United States is to hold legal title to the allotted lands "in trust" and continue to exercise its exclusive guardianship duties over the allottee and his lands for a period of 25 years. Section 349 further provides that at the expiration of the 25 year period, or sooner if the Secretary of the Interior determines that a given allottee is "competent and capable of managing his or her affairs", a fee patent is to issue whereupon "* * * each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State * * * in which they may reside * * *".

The United States Supreme Court has held that upon issuance of a fee patent to the Indian, questions arising thereafter pertaining to title fall within the jurisdiction of the state courts. Dickson v. Luck Land Co., 242 U.S. 371, 37 S.Ct. 167, 61 L ed 371; Larkin v.Paugh, 276 U.S. 431, 48 S.Ct. 366, 72 L ed 640,

644, 645. As observed in Larkin:

> "With the issue of the patent, the title not only passed from the United States but the prior trust and incidental restriction against alienation were terminated. This put an end to the authority theretofore possessed by the Secretary of the Interior by reason of the trust and restriction -- so that thereafter all questions pertaining to the title were subject to examination and determination by the courts, appropriately those in Nebraska, the land being there. * * *

> "* * *

> "We are of the opinion therefore that there was nothing in the congressional statutes to prevent the local court from taking and exercising jurisdiction of the administrator's suit * * * brought after the issue of the fee simple patent. * * *"

Plaintiff has received a patent in fee simple. At this point it appears that the parties agree that jurisdiction generally as it applies to Indians resides in the state courts. However, the point of difference and the legal issue presented to this Court concerns the effect, if any, the Crow Indian Allotment Act of June 4, 1920 (41 Stat. 751) has on state jurisdiction. the pertinent part of Section 2 of the Act prohibits and declares void any conveyance of fee patent land by a Crow Indian to any person, company or corporation who owns more than 1,280 acres of grazing land, or who by such conveyance would become the owner of more than 1,920 acres of grazing land, within the boundaries of the Crow Indian Reservation. Act of June 4, 1920, Sec. 2 (41 Stat. 751). By the Act of June 8, 1940, only those conveyances to non-Indians owning in excess of the prohibited acreages are now prohibited. (54 Stat. 252).

Defendant argues that because of the Crow Indian Allotment Act the federal restrictions have simply not been terminated. Thus, the cases above cited are recognized by defendant but distinguished on the grounds that the additional restrictions of the Crow Allotment Act were not involved in those cases. Defendant goes on to argue that in this event plaintiff must meet the conditions of

State ex rel. Iron Bear v. District Court, 162 Mont. 335, 512 P.2d 1292 and related cases, or fail in his attempt to establish jurisdiction in the state court.

A case cited by plaintiff as principal authority but not discussed by defendant is Dillon v. Antler Land Company, 341 F. Supp. 734, 740, 741, (D.C. Mont. 1972), affirmed 507 F.2d 940 (9th Cir. 1974). In Dillon the Crow Indian attempts to set aside a conveyance of Indian lands conveyed in 1955 after receiving a patent and the elements of the fraud complained of were known as early as 1956. Judge Russell E. Smith, after mentioning other grounds and recognizing an alleged violation of the Crow Indian Allotment Act, held the claim for relief barred by the Montana statute of limitations. Judge Smith held directly that there is no conflict with 25 U.S.C., § 349, which declares all restrictions, etc. shall be removed with issue of patent. He stated "* * * the effect of Section 2 of the Crow Act was to limit the power of a buyer to buy. The Indian was not forbidden to sell; the penalty was directed solely at the buyer." In his discussion Judge Smith comments that the market was limited but this is true in other comparable instances as well. Further, the Court held:

> "The General Allotment Act throughout its history has and the Crow Act does distinguish the competent from the incompetent Indian and the trust lands from the fee lands. <u>State law controls here because Congress has explicitly said that it does.</u> The language of 25 U.S.C. § 349 is '* * * when the lands have been conveyed to the Indians by patent in fee * * * then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State * * *'.

> "The patent exists. It has not been cancelled."
> (Emphasis supplied.)

> Judge Smith further commented in Dillon:

> "The issuance of the fee patent had a broader effect than merely to free plaintiff to sell her land--it freed the United States from its trustee duties and altered the relationship of the land and plaintiff to the State of Montana."

He cited the Montana Enabling Act (25 Stat. 676), and Montana Power Co. v. Rochester, 127 F.2d 189 (9th Cir. 1942).

The Ninth Circuit affirmed Judge Smith in all particulars and also cited Montana Power Co. v. Rochester, 127 F.2d 189, 192, which states in relation to the statute on the issue of fee patents:

> "The obvious purpose of the provision is to define the status of the individual Indians in their relation to the state. Having been released from tutelage, the Indians are thereafter to be regarded as members of the community with the privileges and duties incident to citizenship."

The issue before this Court has been directly ruled upon and decided by the federal courts, therefore further discussion is unnecessary particularly since both firms of attorneys in this matter appeared in the federal district court in the proceeding in Dillon.

The judgment of the district court is reversed and the cause remanded for further proceedings on the merits not inconsistent with this opinion.

_____
                              Justice

We Concur:

_____
     Chief Justice

_____

_____

_____
     Justices.

- 6 -