OPINION
GARY P. SULLIVAN, Chief Justice.

Brief Factual History and Procedural Overview

Appellant Roberta Boyd Beveridge[1] (Roberta), a Tribal member, owns parcels 9, 10, and 11, Township 27 North, Range 51 East, M.P.M., Roosevelt County, MT., all of which is fee patented land lying within the exterior boundaries of the Fort Peck Reservation. Adjacent to Roberta’s land is several acres that have accreted over the years. On or about June 28, 1999, she requested that the Fort Peck Tribes Executive Board grant her an easement over Tribal Lands in order that she might care for her livestock and otherwise maintain her property. On June 28, 1999, the Fort Peck Tribes granted the appellant the easement[2] requested, conditioned upon her agreement to allow public access over her fee patented land.
At some point following the issuance of the easement by the Fort Peck Tribes, Roberta constructed a fence across her property, effectively denying access to anyone attempting to use the access road by vehicle. Roberta states that by constructing this fence she was not denying public access over her land, but rather, she was simply restricting such access to pedestrian traffic. She contended that vehicles entering onto her property became a nuisance too great to bear and that such vehicular traffic disturbed her quiet enjoyment of the property.
Rose and Denver Atkinson own property adjacent to Roberta’s parcels and the land which has accreted. Roberta’s fence effectively blocks Rose and Denver’s vehicular ingress and egress from their property. On July 30, 1999, Rose and Denver filed a Petition for Order to Restrain Roberta from harassing them and blocking the entryway to their property. On August 13, 1999, Roberta filed a cross Petition against Rose and Denver alleging that Denver has 1) “entered (her) privately deeded real estate without (her) permission”; 2) “has opened and left opened the gate”; 3) “has left garbage on (her) privately deeded real estate”; 4) “has given third parties permission to enter (her) privately deeded real estate without (her) permission”; and that 5) “Denver and Rose Atkinson should be restrained by the Court from entering or damaging my privately deeded real estate”. Rose and Denver’s petition was scheduled to be heard on August 24, 1999, and Roberta requested that the Court hear both petitions on the same day. Several subpoenas were issued for the hearing on August 24, 1999, however, due to problems with the service of those subpoenas, the hearing was reset for September 9, 1999. Nonetheless, an Order to Restrain Rose and *199 Denver from entering or damaging the “privately deeded real estate of Roberta” (proposed by Roberta’s counsel) was signed on August 24, 1999, reciting that a hearing was held on that same day.
Following the hearing on September 9, 1999, the Tribal Court, the Honorable Marvin Youpee, presiding, issued an order restraining Roberta from blocking Rose and Denver’s access and mandating that the fence be taken down. Roberta filed a Petition for Review with this Court on September 14, 1999, along with a Request for Stay citing irreparable harm would occur if relief is not granted by this Court. The Petition for Review was granted and a stay issued on November 23, 1999 and the matter was briefed. Oral Argument was heard on January 7, 2000. Post hearing briefs were filed at the Court’s request and the matter was submitted.

ISSUES PRESENTED

Roberta contends that the Tribal Court lacks subject matter jurisdiction involving matters of privately owned fee patented land and the accretions thereto.
Although Roberta does not raise the issue, this Court, sua, aponte, will address the issue of whether the injunction is im-permissibly vague and ambiguous.

STANDARD OF REVIEW

“The jurisdiction of the Court of Appeals shall extend to all appeals from final orders and judgments of the Tribal Court. The Court of Appeals shall review de novo all determinations of the Tribal Court on matters of law, but shall not set aside any factual determinations of the Tribal Court if such determinations are supported by substantial evidence”. Title I, CCOJ § 201. Whether our Tribal Court has subject matter jurisdiction is a question of law, thus we review the matter de novo.

DISCUSSION

The subject matter issue. It should be noted at the outset that no where in the Tribal Court record does it disclose that Roberta, Roy Emerson and Rose[3] are tribal members. Accordingly, we labored under the assumption that we were dealing with the issue of whether our Tribal Court had subject matter jurisdiction involving a dispute over fee patented land owned by non-members. In her initial brief, Roberta briefly mentioned Montana v. U.S. 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 as standing for the proposition that Indian tribes lack power to regulate non-Indian hunting and fishing on reservation land owned in fee patented status. Roberta goes on to state that similar to the holding in Montana, “the Fort Peck Tribal Court lacks power to regulate access and recreational activities on property owned in fee patented status on the Fort Peck Indian Reservation”. Regrettably, this reference to Montana further bolstered our assumption. Following oral argument, we learn that Roberta, Roy, and Rose are all members of the Fort Peck Tribes. Had we known the membership status of these litigants from the outset, we would not have placed the emphasis on Montana. It should be obvious that Montana has no application involving disputes over fee patented land within the exterior boundaries of the res *200 ervation when such land is owned by, and all of the litigants are tribal members, or have consented [4] to Tribal Court jurisdiction. Although we sincerely regret sending our litigants on the proverbial “wild goose chase”, we note with some relief that, those who were invited to that hunt were also those who scattered the geese in the first instance.
Roberta contends that, “although the Tribal Court has personal jurisdiction, it lacks subject matter jurisdiction regarding the resolution of the ownership right of land accreting to (Roberta’s) fee patent property”. She goes on to assert that Rose and Denver’s claim “involves the use and ownership rights of land owned by (Roberta) in fee patent status as well as land accreting thereto”.
To support her position, Roberta cites Woodtick v. Crosby 169 Mont. 38, 544 P.2d 812, a 1976 Montana Supreme Court case, which in turn, cites two United States Supreme Court cases, Dickson v. Luck Land Co. (1917) 242 U.S. 371, 37 S.Ct. 167, 61 L.Ed. 371 and Larkin v. Paugh, 276 U.S. 431, 48 S.Ct. 366, 72 L.Ed. 640 (1928). None of these cases involved Tribal Court jurisdiction, nor do they purport to confer general jurisdiction to State Courts regarding fee patented land within Indian Country.
In Woodtick, the plaintiff, a member of the Crow Tribe, petitioned a Montana District Court to cancel a deed given to defendant, alleging that by this deed the defendant became the non-Indian owner of more acreage of land within the Crow Indian Reservation than permitted under the provisions of the Crow Allotment Act and, therefore, pursuant to the explicit language of that Act, the deed was void. The District Court dismissed plaintiffs case stating that it lacked subject matter jurisdiction. The Montana Supreme Court acknowledged that Montana state courts “have jurisdiction over (fee patented land lying within the boundaries of an Indian reservation) only to the extent yramted, by Conyress ”. The Woodtick court, in reversing the dismissal, went on to hold that Montana law ruled in that case because Congress has explicitly said that it does, citing the language of 25 USC 349, “... when the lands have been conveyed to the Indians by patent in fee ... then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal of the State ...”
The obvious import of § 349, as stated by the Ninth Circuit:
“... is to define the status of the individual Indians in their relation to the state. Having been released from tutelage, the Indians are thereafter to be regarded as members of the community with the privileges and duties incident to citizenship” Montana Power Co v. Rochester, 127 F.2d 189, 192 (9th Cir.1942)
There is nothing in the language of § 349 that would even remotely suggest that the U.S. Congress was granting exclusive jurisdiction to State courts over matters involving fee patented land lying within the exterior boundaries of an Indian reservation. If Congress had intended to grant exclusive jurisdiction in such matters, it could have easily done so. In fact, Congress has granted limited jurisdiction to the States regarding Indian country. 25 USC § 1322[5] states in part:
“Assumption by State of civil jurisdiction *201 (a) Consent of United States; force and effect of civil laws. The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption, such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.” (our emphasis)
As shown by § 1322, Congress’ grant of jurisdiction to the States “over civil (matters) between Indians or to which Indians are parties” within the exterior boundaries of an Indian reservation, comes only with the consent of “the tribe occupying the particular Indian country ...” We have no knowledge of the Fort Peck Tribes giving their consent to the State of Montana pursuant to this statute. Additionally, the grant of jurisdiction pursuant to § 1322 requires action on the part of the State and Montana has accepted very limited jurisdiction as evidenced by M.C.A. 2-1-301 et seq.
Roberta states that she plans on filing a quiet title action in the near future regarding her property and her rights thereto and the adjudication of those issues may necessarily involve trust restricted lands.[6] She goes on to state that her quiet title action would lie only in federal court. This is true because “state court would lack jurisdiction to adjudicate the disposition of Indian trust lands and the Tribal court would lack jurisdiction to adjudicate issues involving the fee patent property”. In view of § 1322(b)[7] we agree that jurisdiction could not lie in State court, (see also M.C.A. 2-1-304 which effectively mimics § 1322(b).)
In support of her contention that our Tribal court does not have jurisdiction, Roberta also cites Montana, supra. Montana involved tribal regulation of non-Indian hunting and fishing on non-Indian alienated land within the Crow Indian reservation. As we noted earlier, all of our litigants are members of the Fort Peck Tribes, or they have chosen our Tribal court as their judicial forum. Thus, as we stated at the outset of our discussion, Montana has no application here. Nor do we think that Montana, supports the proposition that our Tribal court lacks authority to adjudicate disputes involving fee patented land owned by members and lying within the exterior boundaries of the reservation.
*202 Thus, to suggest, as Roberta does, that the Fort Peck Tribal Court lacks jurisdiction to adjudicate a dispute, brought on by a ti'ibal member against another tribal member involving fee patented property within the exterior boundaries of the Fort Peck Reservation, is wholly without merit. The Tribal Court is the proper forum for all of the issues discussed herein.
The content of the injunction. The Tribal Court issued two separate orders to restrain. The first one, dated August 24, 1999, restrains Denver and Rose from “entering or damaging” the privately deeded real estate of Robert Boyd Bever-idge. This order was prepared by Roberta’s counsel and has the words “proposed order” written in cursive on the face of the order[8]. The second order, which appears to be a “boilerplate” restraining order' dated September 9, 1999, mutually restrains the “plaintiff and defendant” from “further harassment between the parties”. At the bottom of the second order, immediately below the Judge’s signature, but just above the Clerk’s attestation, appears:
“Stipulations: The fence to be taken down within 10 days from today. The acreeded (sic) land is undetermined and can be used for Public Access. The Atkinsons may not be allowed on private land of Roberta Beveridge. Permanent injunction granted.”
Did the parties “stipulate” in open court as to these matter's? Or', does “stipulations” refer to conditions ordered by the Court? Was Roy Emerson one of the defendants to be restrained? Which fence on whose land was to be taken down? What was the factual and legal basis for removing the fence? What does “(t)he acreeded (sic) land is undetermined and can be used for Public Access” mean? Where was the accreted land? From which “private land of Roberta Beveridge” were the Atkinsons disallowed? After noting these ambiguities, this Court issued a stay of the order, pending further proceedings in this Court.
Our Code of Comprehensive Justice does not address the form and content of an injunction. In the absence of a provision in our tribal code, we look to federal legislation for guidance. Title VIII § 501. We note that Rule 65(d) Fed. Rules of Civ. Proc. provides:
“(d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.”
It is clear that one who is before the Court must understand the conduct prescribed or prohibited in the injunctive order. To insist that an order, which mandates certain conduct, be drafted with sufficient clarity to allow those subject to the order to understand the Court’s expectations of them, is a simple matter of fundamental fairness. Regarding the requirements set forth in Rule 65(d), the United States Supreme Court has stated:
“As we have emphasized in the past, the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertain *203 ty and contusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.” Schmidt v. Lessard, (1974) 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661
The Schmidt court also pointed out that:
“The requirement of specificity in injunction orders performs a second important function. Unless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing.” (id. at 477, 94 S.Ct. 713)
It is clear that the order issued by the Tribal Court on September 9, 1999, is im-permissibly vague and ambiguous and fails to meet the basic requirements of Rule 65(d). We therefore vacate that order and remand to the Tribal Court with instructions to conduct further proceedings in order that it might re-draft the order in accordance with Rule 65. We also vacate the order issued by the Tribal Court on August 24, 1999, as being unnecessary, in that the order of September 9, 1999, appeal's to have dealt with the same issues. However, for reasons not reflected in our record, the Tribal Court failed to dissolve that order when issuing its subsequent order of September 9,1999.
CONCUR: GARY M. BEAUDRY, Associate Justice, CARROLL J. DeCOTEAU, Associate Justice.

. Roy Emerson, Roberta’s son, is also named as a defendant in the lower court action to restrain. Roy does not own any of the property and did not file an answer, nor is he represented in this matter.

. There are three separate resolutions in the lower court file, all of which are substantially the same. They are all dated on the same date (June 28, 1999) and bear the same signatures. The reason for issuing the easement in three separate documents does not appear in our record.

. It was not until we read the Post Hearing briefs of both counsel that we learn that Roberta, Roy and Rose are all enrolled members of the Fort Peck Tribes, (see Roberta's brief, p. 2, line 1, and Rose and Denver's brief, p. 2, line 8.) Inasmuch as both parties apparently agree upon their respective membership status, we accept such status for the purpose of our holding.

. Denver Atkinson is the only litigant in this case who is not a tribal member. Denver consented to Tribal jurisdiction by virtue of filing his complaint in Tribal Court.

. This is one of the Public Law 280 provisions. See § 1360 lor jurisdictional provision to specific states not including Montana.

. Roberta’s brief, p. 3, line 27 through p. 4, line 4.

. § 1322(b) Alienation, encumbrance, taxation, use, and probate of property. Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute, or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

. In spite of the notation, "proposed order", this order was signed by Assoeiate Tribal judge, Marvin Youpee.